CAROLINA H. HINNERS, complainant-respondent,

*v.*

ANNA (ANNIE) BANVILLE et al., defendants-appellants.

[Submitted May 26th, 1933.  Decided September 27th, 1933.]

*Mr. Edward A. Kenney,* for the defendants-appellants.

*Mr. Benjamin Heyman,* for the complainant-respondent P. L. J., Incorporated.

The opinion of the court was delivered by

HEHER, J.

This is an appeal from an order dismissing an order entered on August 17th, 1932, requiring complainant, Carolina Hinners, her husband, William H. Hinners, and respondent corporation, P. L. J., Incorporated, to show cause why the decree *pro confesso* and the final decree entered herein should not be opened and vacated, and appellants permitted to answer the bill, and to redeem mortgaged premises sold under a writ of *fieri facias* issued pursuant to the directions of the final decree.

The bill prayed the foreclosure of a mortgage in the sum of $2,000, made by appellants, Stephen A. Banville and Rose, his wife, Annie McCullough and Michael, her husband, Helen Banville, John Banville and Mary, his wife, and others, heirs-at-law of John Banville, deceased, covering lands situate in the borough of Cliffside Park. Appellants were not served with process of subpœna. The sheriff of the county of Bergen returned the writ of subpœna *non est* as to appellants, and two other defendants, Katherine Banville and Elizabeth Banville. There was attached to the writ an affidavit by the under-sheriff, setting forth that he inquired for these defendants, for the purpose of making service of the subpœna, and had been unable to find them in the county of Bergen, and

that he was credibly informed, and varily believed, that they could not be found in the State of New Jersey, and that the "present address" of each was "unknown." An order of publication was thereupon entered. It recited that appellants resided out of the State of New Jersey, and that process could not be served upon them, and contained the usual provision for publication of the notice of the order, and service of a copy upon each absent defendant by mail, if his post office address could be ascertained. Publication of the order was had in a newspaper published in Tenafly, which had little or no circulation in the municipality in which the mortgaged lands are located. The affidavit of inquiry filed by complainant's solicitors shows that inquiry for the absent defendants was made by letter addressed to Kathryn Banville, at Malden, Massachusetts, and to Elizabeth Banville, at Peekskill, New York, and that both letters were returned by the postal authorities marked "unclaimed—unknown." The affiant concluded that he knew of "no other source of information concerning said defendants, having tried every available source prior to the filing of the bill of complaint in the matter."

The final decree was entered on February 15th, 1932, and the lands were sold by the sheriff to complainant for $100 at a sale held on May 25th, 1932. The sale was confirmed on June 14th, 1932. The sheriff conveyed the lands to complainant, and the latter made conveyance to respondent corporation, P. L. J., Incorporated, on July 20th, 1932, for a consideration of $6,700.

The learned vice-chancellor found that appellants were residents of this state, and that if a reasonably diligent inquiry had been made, they would have been found and served with process; that due to the negligence of complainant's solicitors in this respect, appellants were denied the opportunity to redeem, and to protect themselves by bidding at the sale, and that while the deed to complainant conveyed the legal title, the sale would be set aside and complainant directed to reconvey to appellants, upon payment of the amount due on the decree, if the title were still in complainant, but that respondent corporation, P. L. J., Incorporated, was a *bona fide*

purchaser for value, without notice of the equities of appellants, and as such held the title free of such equities. He found also that appellants were guilty of laches.

We are in accord with the vice-chancellor in his finding that if complainant had made diligent inquiry, appellants would have been found and served with process. Complainant failed in the performance of the duty imposed upon her to make an effective inquiry. But assuming that she entertained a conscientious and apparently well-founded belief that appellants could not be found in the state, there was a singular and wholly unexplained failure to comply with the mandate of rule 37 of the court of chancery, that complainant, or his solicitor, or his agent actually entrusted with the management and conduct of the suit, in all cases where the residence and post office address of an absent defendant not actually served with the notice to appear shall not be known, shall make *diligent* and *careful* inquiry therefor.

At the time of the filing of the bill, and for many years prior thereto, Stephen Banville, his wife, Rose, and his sister, Helen, resided on the mortgaged premises. It was the Banville family homestead, purchased in 1889. John Banville and his wife, Mary, occupied premises adjoining. The residence of Annie McCullough and her husband, Michael, was to the rear of the mortgaged lands, and within one hundred feet thereof. John Banville was then, and had been for twenty-five years, engaged in the furniture transportation business in Cliffside Park. He had lived in that municipality for fifty-four years. His name was listed in the telephone directory, and his address was therein stated to be the mortgaged premises. The complainant and her husband had resided in that municipality, and knew the Banvilles. John Banville moved their household furniture to Brooklyn when they took up their residence there in 1917. He had known complainant's husband for forty-five years. The latter admitted that he knew that John Banville, and his sister, Helen, resided in Cliffside Park at the time of the filing of the bill. Helen Banville at that time was, and had been for seventeen years, employed in the Cliffside Park post office. The mortgaged

lands are located on Palisade avenue, in the business center of the borough, near the post office and borough hall.

A *bona fide* effort by the complainant to bring in appellants as absent defendants would have unquestionably borne fruit. Why these obvious sources of information at home were ignored is not made clear. The conclusion is irresistible that complainant was either grossly negligent in the performance of the duty imposed upon her in the circumstances, or deliberately contrived to procure a decree and sale in foreclosure without notice to appellants. In any event she did not do all that was required of her to give appellants notice of the suit. Consequently, they did not have such notice until after the foreclosure sale.

The complainant is on either horn of the dilemma—one of her own making. There was either gross negligence or a fraudulent attempt to deprive appellants of their property, by denying them the opportunity to redeem, or to protect themselves at the sale. And the case for complainant is not strengthened by her attempt to profit by her own default in the performance of the duty resting upon her. While the amount due on the decree was $2,143, plus costs, complainant's husband, two weeks after confirmation of the sale, informed Rose Banville, wife of Stephen, that complainant was the owner of the property, and demanded $5,500 for a reconveyance. In conveying the lands to the respondent corporation, for a consideration of $6,700, complainant believed that she was conveying to the Banvilles. It was in consummation of a contract made with Thomas F. Banville, who, however, was a mere tool in the hands of the officers of the respondent corporation, and was acting as its agent and by the same token betraying his kin, for a consideration of $500. Appellants, of course, were unaware of the duplicitous role played by Thomas in this transaction.

The origin of the jurisdiction of our courts in proceedings *in rem* is to be found in the power of the sovereign state to exercise control over all objects to which that power can be directly applied. The state must control all property within its territorial limits. Parties interested in the *res* and resid-

ing within the state, or voluntarily coming into the state in order to have their rights in respect of the property in question enforced or protected, have a right to be heard in the courts of this state. It is their right to be fairly notified of the action so as to have an ample opportunity to appear and be heard therein. Otherwise, the rights of the parties interested in the *res* are not determined by due process of law. *Amparo Mining Co.* v. *Fidelity Trust Co., 74 N. J. Eq. 197, affirmed, 75 N. J. Eq. 555.* "Due process," within the intendment of the fourteenth amendment to the federal constitution, requires, *inter alia,* in proceedings which involve a determination of the personal liability of the defendant, that he be brought within the jurisdiction of the court by service of process within the state, or his voluntary appearance. Substituted service by publication, or in any other authorized form, is sufficient to inform the parties of the object of proceedings taken where property is once brought under the control of the court by seizure or some equivalent act, or where the object of the action is to reach and dispose of property in the state, or of some interest therein. Such service may answer in all actions which are substantially proceedings *in rem.* *Pennoyer* v. *Neff, 95 U. S. 714; 24 L. Ed. 565; McGuinness* v. *McGuinness, 72 N. J. Eq. 381; Sheldon* v. *Sheldon, 100 N. J. Eq. 24.*

It is fundamental that in every proceeding of a judicial nature it is essential that the person whose rights are to be affected should be a party to the proceeding, and have an opportunity of making defense. *Hess* v. *Cole, 23 N. J. Law 116, 124.* "Due process of law" signifies a right to be heard in one's defense. *Hovey* v. *Elliott, 167 U. S. 409; 17 Sup. Ct. 841; 42 L. Ed. 215.*

Section 12 of the Chancery act (*1 Comp. Stat. p. 414*) provides that in case it shall be made to appear, by affidavit or otherwise, to the satisfaction of the chancellor, that a defendant against whom a subpoena or other process to appear shall issue is out of the state, or cannot, *upon due inquiry,* be found therein, or that he conceals himself within this state,

such defendant shall be deemed and taken to be an absent defendant, and the chancellor may, by order, direct him to appear and answer within a designated time. Section 13, as amended (*P. L. 1912 p. 224*), provides that such notice of the order as the chancellor shall by rule direct, *shall be served personally on such absent defendant,* or be published as therein provided, in which event a copy of such notice shall be mailed to such defendant unless his residence or post office address be unknown, and "cannot be ascertained upon making such inquiries as the chancellor may, by rule, prescribe in such case, * * *." Assuming that complainant's inquiry satisfied her that service of process upon appellants could not be effected in the state, the inquiry prescribed by the statute and the applicable rule was not made. It is manifestly essential to the validity of a decree, as between parties to the suit, that jurisdiction of the parties defendant be acquired by service of process in substantial conformity with the requirements of the statute.

And there can be no question as to appellant's right, upon a proper showing, to the relief sought. This is a direct and not a collateral attack on the decree. *Cf. McCahill* v. *Equitable Life Assurance Society, 26 N. J. Eq. 531; Lintott* v. *McCluskey, 105 N. J. Eq. 354; 148 Atl. Rep. 161; Pennoyer* v. *Neff, supra.*

Even in cases where jurisdiction has been lawfully acquired, a sheriff's sale may be set aside on petition, and without bill, after the sale has been carried into effect by the delivery of a deed. A person whose property has been sold at judicial sale, to his injury, may have the sale set aside, upon showing that he was prevented from attending it by want of due notice, fraud, mistake or accident. *Mutual Life Insurance Co.* v. *Goddard, 33 N. J. Eq. 482; Trustees for Support of Public Schools* v. *New Jersey West Line R. Co., 30 N. J. Eq. 494; affirmed, sub nom. Chamberlain* v. *Larned, 32 N. J. Eq. 295.* In the last cited case, Chief-Justice Beasley, speaking for this court, said:

"It is true that a purchaser at a sheriff's sale acquires a vested right, which is, like all other legal rights, indefeasible

except by the operation of legal methods; but then one of such methods is the judgment of the court under whose order such sale has occurred, in the exercise of its supervision over the execution of its own process. Such power of supervision is one of the essential prerogatives of a court, and it is a mistake to suppose that it can be exercised only when it has been appealed to in a formal manner by a party alleging himself to have been injured." It follows, that appellants are entitled to relief as against complainant.

But the respondent corporation asserts that it is an innocent purchaser in good faith, for value, and without notice of the rights of appellants in the lands. There are circumstances that tend strongly to create doubt as to its good faith. It admittedly practiced deceit. The property was concededly worth considerably more than the price paid to complainant. The estimates of its value range from $15,000 to $20,000. Although complainant insisted upon a substantial profit as a consideration for a reconveyance, she was anxious that the property be returned to the Banvilles, and it is fairly inferable that she would not have consciously sold to a third party for the price paid by respondent corporation. Knowing this, the latter's officers enlisted the services of Thomas F. Banville, who, for the consideration named, agreed to purchase the property from complainant, pretending that he was acting for the Banvilles (his co-mortgagors), without disclosing that he was in reality the agent of respondent.

But it is unnecessary to determine this question. This respondent is chargeable with notice. Stephen Banville, his wife, Rose, and his sister, Helen, were occupants of the mortgaged premises. It is the duty of an intending purchaser of land which is in the possession of a person other than the intending grantor, to inquire of the occupant and ascertain the rights under which he holds; and if he does not make such inquiry, he is chargeable with notice of such facts as the inquiry, if it had been in fact made, would have revealed. *LaCombe* v. *Headley, 91 N. J. Eq. 63, 66.* The effect of the constructive notice, due to possession, is a notice of everything which a party interested in the premises would get by in-

quiring of the party in possession. *Essex County National Bank* v. *Harrison, 57 N. J. Eq. 91, 96.* When facts are brought to the knowledge of the person contemplating the purchase of the record title which are sufficient to apprise him of the existence of an outstanding claim of title, and a reasonable investigation of such facts would necessarily discover the existence of such outstanding title, the purchaser is put upon inquiry, and charged with notice of the facts which a reasonably diligent inquiry would have ascertained. It is also well settled that the open, visible, notorious and exclusive possession of land, by one who is not the record owner, affords a notice to one who purchases the record title which puts such purchaser upon inquiry, and charges him with a knowledge of such facts as a reasonably diligent inquiry would have ascertained. *Schwoebel* v. *Storrie, 76 N. J. Eq. 466.* The fact of possession is notice of all such matters as a prudent man, desirous of purchasing the property, would naturally inquire about respecting the title. *Wood* v. *Price, 79 N. J. Eq. 620, 627.* In the last cited case this court held that the prospective purchaser, having ascertained that the possession of the occupant is that of a tenant, would, in the ordinary course of things, proceed to inquire as to the title of the landlord, and that, therefore, the possession of the premises by a tenant is constructive notice not only of such tenant's rights and equities, but as well notice of those of the landlord. See, also, *Dele* v. *Bruning, 101 N. J. Eq. 58; affirmed, 105 N. J. Eq. 252.*

In the instant case the possession of the above named appellants was open, notorious and unequivocal, and constituted, therefore, notice of the right, or claim of right, under which they occupied it. This notice is effective not only as to those who have actual knowledge of the occupation, but as to all the world. *LaCombe* v. *Headley, supra.* It is admitted that the respondent corporation made no effort to ascertain the rights under which these appellants held possession of the land, and having failed to do so, it is chargeable with notice of such facts as inquiry would have disclosed.

It is argued that, because Rose Banville, wife of Stephen,

expressed a willingness to pay rent when complainant's husband informed her, on July 1st, 1932, that complainant had acquired title to the property in the foreclosure proceedings, and some of appellants thereafter negotiated for a reconveyance of the property, the right to relief was lost. The vice-chancellor concluded that if the purchaser had made inquiry of the occupants of the lands, the latter "would probably have said that they had been the owners, their title had been foreclosed, they were negotiating for a repurchase, and in the meanwhile were renting the property." This is purely speculative. The presumption is that such inquiry would have disclosed the fact that they had not been served with process in the foreclosure proceedings, and that, for lack of jurisdiction, the decree did not bar their equity of redemption. And the disclosures made would undoubtedly have been sufficient to, at least, put the prospective purchaser upon inquiry as to the outstanding claims of title of the other appellants.

The right of appellants to relief is not barred by laches. Laches involves something more than mere delay, mere lapse of time. There must be delay for a length of time which, unexplained and unexcused, is unreasonable under the circumstances, and which has been prejudicial to the defendant. *Massie* v. *Asbestos Brake Co., 95 N. J. Eq. 298, 311; Obert* v. *Obert, 12 N. J. Eq. 423; Cawley* v. *Leonard, 28 N. J. Eq. 467; Johnston* v. *McKenna, 76 N. J. Eq. 217; Farr* v. *Hauenstein, 69 N. J. Eq. 740; Daggers* v. *VanDyck, 37 N. J. Eq. 130.* There was in the instant case no acquiescence by appellants in the hostile title asserted, upon which complainant relied to her injury, and this applies also to the purchaser. It was not such acquiescence as is the equivalent of consent. Complainant obviously was not prejudiced by the lapse of time. She believed she was making a reconveyance to the Banvilles, and the respondent corporation deliberately deceived her, with the assistance of Thomas Banville, so as to acquire the property at slightly more than one-third of its conceded value. Enforcement of appellants' rights would not, under these circumstances, be inequitable or unjust. Moreover, John Banville, who was financially able to redeem the

lands, did not learn of the foreclosure proceedings, and sale therein, until after the conveyance to respondent.

The final decree and sale under the execution issued thereon will be set aside, and appellants permitted to redeem the mortgaged lands upon payment of the amount due upon the mortgage, with such costs as may be proper under the circumstances. This is the relief sought.

Decree reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.