FRANCES MATARRESE, complainant-respondent and appellant,

*v.*

PAOLO MATARRESE, defendant-appellant and respondent, and ALEXANDER SUMMER MORTGAGE COMPANY, a New Jersey corporation, respondent.

[Submitted February term, 1948. Decided May 13th, 1948.]

*Messrs. Slingland, Houman & Bernstein (Mr. Maurice Bernstein,* of counsel), for the complainant-respondent and appellant.

*Mr. Charles C. Carroll,* for the defendant-appellant and respondent.

*Messrs. Reed, Reynolds & Smith (Mr. Hugh B. Reed,* of counsel), for the respondent.

The opinion of the court was delivered by

BURLING, J.

These are two appeals arising out of the same cause of action, No. 212 being the appeal of Paolo Matarrese and No. 213 being the appeal of Frances Matarrese. The appeals were consolidated by consent for argument in this court, both parties appealing from an order made October 8th, 1947, wherein a petition by Paolo Matarrese to reopen a decree of the Court of Chancery was granted in part and dismissed in part. Paolo Matarrese appeals from that part of the order dismissing his

petition in part and Frances Matarrese appeals from the whole order.

The appeals have their origin in an action for partition commenced on April 17th, 1944, in the Court of Chancery (Docket 148/32). In that suit, Frances Matarrese sought partition of certain lands in the Borough of East Paterson in the County of Bergen of which she was seized as a tenant in common with Paolo Matarrese, then and now a resident of the Republic of Italy.

Frances Matarrese derived her right, title and interest to the land in question as a devisee under the will of her deceased husband, Giacomo Matarrese, the brother of Paolo. The land in question consisted of unimproved lots, acquired by the brothers in 1919. Paolo left the United States in 1921 and returned to Italy where he has resided ever since. In 1923 Giacomo Matarrese entered into a lease with an advertising concern whereby the right was granted to place billboard posters on the land in consideration of an annual rental of $30. By successive renewals this lease continued until the death of Giacomo, whereupon the same concern entered into a similar agreement with Frances Matarrese who represented herself to be the new owner and thereunder the sum of $60 was paid to Frances Matarrese, making a total payment to her and her deceased husband of $630. On April 17th, 1944, the said lease was canceled and the company was requested to and did remove its structure.

An examination of the dockets in the office of the clerk in Chancery reveals that the land in question was the subject of two actions for partition before the present suit was started.

Giacomo Matarrese filed a bill for partition on October 31st, 1942 (Docket 149/204) which action was discontinued on March 31st, 1943, because rule 298 of the Court of Chancery was not complied with and because of difficulty in the substitution of Frances Matarrese in place of Giacomo as complainant, he having died. On April 1st, 1943, another action was begun with Frances as complainant (Docket 149/397) which action was discontinued February 2d, 1944, because *R. S. 2:29–35* and *2:29–36*, which statutes relate to absent defendants in the Court of Chancery, were not com-

plied with. It is significant that in that action a guardian *ad litem* was appointed and he filed an answer, the action being discontinued with his consent.

In the course of the present partition suit notice was given to the Alien Property Custodian pursuant to chapter 297 of the laws of 1942. The Alien Property Custodian filed in the Court of Chancery a written acceptance thereof and then authorized a solicitor of this court to appear for the defendant, Paolo Matarrese. The solicitor filed an appearance in the cause for Paolo Matarrese. No guardian *ad litem* was appointed and the suit proceeded to final decree. Further substituted service was attempted on Paolo Matarrese by publication and mail addressed to Paolo Matarrese at Albero Bello, Bari, Italy, his last known address. This letter was intercepted by a war censor.

The proofs are barren as to the birthplace of Paolo Matarrese or his citizenship when he departed from the United States and whether he was an alien at the time of the beginning of the war with Italy. However, this is immaterial as even if he had acquired and retained American citizenship, his residence within the territory of a nation with which the United States was at war was sufficient to characterize him as an alien enemy under the Trading With the Enemy Act, 50 *U. S. C. A. App.*, § 2. In *United States* v. *Krepper* (*Circuit Court of Appeals*) (*New Jersey, 1946*), *159 Fed. Rep. (2d) 958; certiorari* denied, *330 U. S. 824; 67 S. Ct. 865; 91 L. Ed. 1275*, the court said (at *p. 966*) :

"In matters involving property rights of American citizens residing in a country at war with the United States, it has been consistently held that the term 'individual resident' in a statute included as enemies individual residents within the territory of a nation with which the United States was at war and, therefore, applied to citizens of the United States as well as aliens under the provisions of 'Trading With the Enemy Act,' section 2."

Refer also to *Tortoriello* v. *Seghorn* (*Court of Chancery, 1918*), *103 Atl. Rep. 393* (not reported in the state reports).

General Order No. 6 issued pursuant to the above act and Executive Order, dated August 3d, 1942, prescribed the pro-

cedure for serving notice upon the Alien Property Custodian in situations like the present case. Notice was given and the Alien Property Custodian accepted such notice and directed a solicitor of this court to appear and represent Paolo Matarrese, and he filed an appearance herein.

No answer or other pleading being filed in the cause, a decree *pro confesso* and order of reference was obtained. The special master reported that the lands were not capable of actual partition and recommended a sale. He further reported that complainant, Frances Matarrese, and her deceased husband had expended $672.49 for taxes and assessments and that one-half of that sum or $336.24, was chargeable as a lien against the share of Paolo Matarrese. No mention was made in the deposition of Frances Matarrese of income received by her and her deceased husband. In compliance with the special master's recommendations the lands were ordered sold at public sale, and, on September 14th, 1944, a sale was held. The solicitor designated by the Alien Property Custodian to represent Paolo Matarrese was notified of the sale but did not appear at the sale. The property was struck off to Frances Matarrese, the complainant, for the sum of $500, no other party bidding. This sale was approved by the Court of Chancery and in the distribution of the proceeds the lien impressed for taxes, assessments and costs, exhausted the share of Paolo Matarrese so that there was no surplus to turn over to him, or to the Alien Property Custodian.

On May 23d, 1945, complainant sold the said lands to Alexander Summer Mortgage Company for the sum of $2,750.

Paolo Matarrese filed herein a bill for partition between himself and Alexander Summer Mortgage Company (Docket 147/30). This bill was dismissed upon a motion to strike upon the ground that it was an attempt to collaterally attack the decree for sale in partition in the present suit. From this dismissal, no appeal has been taken.

On July 15th, 1946, Paolo Matarrese through his present solicitor filed a petition to reopen these proceedings to the end that he might be permitted to answer the bill of complaint and interpose a defense to the action. An order was advised and entered dismissing the petition to reopen the decree as

it affected the Alexander Summer Mortgage Company, but reopening the decree for sale and order of distribution as against the complainant, Frances Matarrese, and ordering an accounting between the Matarreses. From this decree both Frances and Paolo Matarrese appeal.

Frances Matarrese and the Alexander Summer Mortgage Company contend that the decree was valid because of the entry of an appearance by the solicitor for the Alien Property Custodian. The question is whether the appearance so filed is effective so as to obviate the necessity of a guardian *ad litem* under the statute. We think that it is not.

Since at the time of the filing of the bill of complaint the United States was at war with Italy, wherein the defendant, Paolo Matarrese was believed to be, a compliance with the procedure set forth in the statute, including the appointment of a guardian *ad litem,* was essential for a valid decree.

The statute (*P. L. 1942 ch. 297*) requires that a guardian *ad litem* be appointed if the person in question does not answer within the time limited. The difference between an appearance and an answer is elementary and needs no comment. Had the legislature intended that an appearance would suffice to do away with the necessity of a guardian *ad litem* it would have said so.

The legislature of this State, enacted legislation (*supra*) (chapter 297 of the laws of 1942) respecting absent defendants in suits in the Court of Chancery in time of war. This act contains a mandatory provision for the appointment of a guardian *ad litem* for such an absent defendant by whom he must appear and defend said suit. It further provided that the Alien Property Custodian under appointment by the President of the United States might be appointed as such guardian *ad litem*. Subsequently and after the institution of this suit, chapter 297 of the laws of 1942 was amended in 1947 by chapter 313 (*R. S. 2:29–41.3*) to provide that the Chancellor might appoint the Attorney-General of the United States as such guardian *ad litem*.

There have been no adjudications as to the effect of the failure of the appointment of such a guardian *ad litem*. There have been adjudications with relation to the failure of ap-

pointment of a guardian *ad litem* for one who is under the disability of infancy. In the case of *Weining* v. *Selitto* (*Court of Chancery, 1936*), *121 N. J. Eq. 60;* affirmed (*Court of Errors and Appeals, 1937*), *121 N. J. Eq. 613,* it is stated (at *p. 62*):

"A judgment or decree against an infant who was not represented by a guardian *ad litem,* is not void and subject to collateral attack. *Weinstein* v. *Chelsea, &c., Co., 104 N. J. Eq. 258.* But it is erroneous since it cannot be lawfully rendered until a guardian is appointed to defend. *Foulkes* v. *Young, 21 N. J. Law 438; Camden Commercial College* v. *Piper, 5 N. J. Mis. R. 535; 137 Atl. Rep. 555.* And for such error the judgment will be reversed without considering whether or not the infant has a defense on the merits."

The effect of the failure to appoint a guardian *ad litem* for a mentally incompetent person was comparably discussed and it was held in *In re Marlin* (*Court of Chancery, 1916*), *86 N. J. Eq. 265* (at *p. 269*):

"The presence of a guardian before the court to represent an incapacitated party is essential, and the guardian can only be appointed when the party is before the court."

It is contended that the defendant Paolo Matarrese is chargeable with laches in this case as the time for appeal had expired. "To apply the doctrine of laches as a defense, two elements are involved—knowledge and delay (*Endicott* v. *Marvel* (*Court of Chancery, 1913*), *81 N. J. Eq. 378* (at *p. 388*)), and neither existed." *Citizens Casualty Co.* v. *Zambrano Trucking Co., Inc.* (*Court of Errors and Appeals, 1947*), *141 N. J. Eq. 319.* The defense of laches is not regarded with favor where the parties stand in a confidential relation (in this case an accounting by a co-tenant to whom was entrusted the income from the premises). *Shoup* v. *Dowsey* (*Court of Chancery, 1944*), *134 N. J. Eq. 440* (at *p. 475*). Moreover, to be chargeable with laches, the party to be charged must have had freedom of action. *Turnley* v. *Nixon* (*Court of Chancery, 1932*), *112 N. J. Eq. 116.* We are concerned with defendant's right to be heard and are in accordance with the Vice-Chancellor that the case comes within the exception to the rule because of special equity. *Walkinson* v. *Walkinson*

*(Court of Errors and Appeals, 1904)*, *68 N. J. Eq. 632* (at
*p. 642*).

The land in question consisted of unimproved lots so that
actual partition is physically possible. It is true that the
numerical majority of partition suits results in a sale. Never-
theless the rule must not be lost sight of that physical par-
tition is the object of the suit, partition by sale being only
resorted to when actual division is impossible. *Davidson* v.
*Thompson* *(Court of Chancery, 1871)*, *22 N. J. Eq. 83*. Tes-
timony was adduced that the partition was not advisable due
to the size of the lot but it might well have been that had
defendant been properly represented he might have brought
in evidence to prove the contrary. He was at least entitled
to contest the point, which he did not have an opportunity
to do.

It appears that the final decree impressed a lien in favor
of the complainant for taxes, assessments and costs, which
lien exceeded the share allotted to defendant from the pro-
ceeds of the sale. From the ownership of a one-half interest
as tenant in common of a parcel of real property very soon
to sell for $2,750 defendant was judicially divorced without
receiving one cent in return.

When viewed in the light of rising prices in the last several
years, such a discrepancy in price is such as to shock the con-
science of a court of equity. Compare the reasoning in the
mortgage deficiency case of *Federal Title and Mortgage Guar-
anty Co.* v. *Lowenstein* *(Court of Chancery, 1933)*, *113 N. J.
Eq. 200* (at *p. 204*); *Young* v. *Weber* *(Court of Chancery,
1934)*, *117 N. J. Eq. 242* (at *p. 245*).

Frances Matarrese argues that at the time Paolo Matarrese
filed this petition, this country was still at war with Italy,
peace not having been effected until September 15th, 1947,
and was precluded from prosecuting any suit or action at law
or in equity in any court within the United States. His peti-
tion was not the commencement of an action, but was a defen-
sive step in an action in which he had been named defendant.
Alien enemies within the terms of the Trading With the
Enemy Act are permitted to defend actions brought against
them. *Watts, Watts & Co.* v. *Unione Austracia Di Naviga-
zione*, *248 U. S. 9; 39 S. Ct. 1; 73 L. Ed. 100*.

The learned Vice-Chancellor held that the Alexander Summer Mortgage Company was a *bona fide* purchaser for value and was consequently entitled to hold the property free of equities. This ruling overlooks the requirement that a purchaser at a judicial sale takes only such title as an examination of the proceedings would show. *Boorum* v. *Tucker* (*Court of Chancery, 1893*), *51 N. J. Eq. 135;* affirmed, (*Court of Errors and Appeals, 1894*), *52 N. J. Eq. 587*. An examination would have disclosed Paolo Matarrese as being designated as a person within a designated enemy country, the absence of a guardian *ad litem,* without defense, and incidentally the price at the judicial sale.

For the above reasons the decree *pro confesso,* decree for sale, decree confirming sale and deed thereunder and order of distribution will be vacated and set aside and the case remanded for action in accordance with this opinion. This results in a reversal of the decree (order) in No. 212 and an affirmance of the decree (order) as so modified in 213.

No. 212—

*For affirmance*—BODINE, WACHENFELD, JJ.   2.

*For reversal*—THE CHIEF-JUSTICE, DONGES, HEHER, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ.   10.

No. 213—

*For affirmance*—BODINE, WACHENFELD, JJ.   2.

*For modification*—THE CHIEF-JUSTICE, DONGES, HEHER, EASTWOOD, BURLING, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ.   10.