There are occasionally tight legal knots that a court of equity is called upon to untangle in the endeavor to accomplish justice in its application to all of the interests implicated in an unusual case. This is one.
The story is that the plaintiff, Township of Woodbridge, by virtue of a final decree entered on August 5, 1942, in a tax lien foreclosure suit, acquired title to premises known as Lots Nos. 150 and 151 in Block 718-A. Throughout the progress of the foreclosure proceeding the record title to the premises appeared to be vested in John Pavel and wife by a deed from Alex Balogh and wife, dated March 3, 1931, and recorded on July 23, 1931. Upon unsuccessful inquiry, the Pavels, their respective unknown heirs, devisees, and personal representatives were served in the cause by publication.
The township eventually conveyed the premises to Stephen Takacs and Helen Takacs, his wife, by deed dated May 22, 1945, recorded August 4, 1945, for the price of $325. Those grantees conveyed the premises by warranty deed dated July 15, 1946, to Joseph Hadyniak and Helen Hadyniak, his wife. The revenue stamps affixed to the instrument in the sum of $2.20 reflect inferentially a consideration of approximately $2,000.
There are three threads running through the fabric of this story that attract particular notice. The Pavels seem to have occasionally used that surname, as they evidently did in the transactions relative to these premises, but their true surname is "Paver." This fact was neither known nor remotely conjectured by the solicitor of the complainant in the foreclosure suit. Secondly, it is now revealed that Alex Balogh, the grantor in the deed to the Pavels, had borrowed $300 from Mrs. Pavel and executed and delivered the deed to her to secure the payment of the loan. The debt was paid, and the Pavels thereupon on June 12, 1935, reconveyed the premises *Page 455 
to Alex Balogh. That deed was not recorded. Thirdly, Joseph Hadyniak and his wife since the conveyance of the premises to them by warranty deed on July 15, 1946, have expended about $12,000 in the improvement of the premises.
Alex Balogh died intestate survived by his widow Anna, and five children. On August 17, 1948, the five children as heirs at law of Alex Balogh filed the present petition seeking a vacation of the final decree and a determination of their interests and estates in the premises and their right of redemption.
The ground upon which the application rests is alleged to be that a diligent inquiry in the manner required by the rules of court was not made to ascertain the whereabouts of John Pavel and Elizabeth Pavel, who were in fact residents and registered voters of the City of Perth Amboy. Yes, but there known and registered under the name of Paver. The fact is that the Pavers do not now complain.
In the foreclosure action the solicitor of the complainant in the pursuit of his inquiries examined the tax records of the township and discovered that the premises were assessed as vacant land. Recent proofs seem to establish that during the period of the foreclosure there was upon the premises a small structure described as a "hut" or "shanty" which was the anchorage of the intemperate petitioner James Balogh until the Takacs grantees acquired the possession of the premises in 1945. It is acknowledged that the solicitor, unaware of any occupant, made no inquiry to elicit any information from James Balogh. It is not made evident that the latter at that time had any knowledge of the unrecorded deed.
In recognizing the equities the value of the lots themselves carries some significance. From a sale of comparable lands in 1948 I entertain the opinion that $250 closely approximates the actual value of the premises here involved. Thus, before me are five petitioners asserting a gross equity of about $50 each which in any aspect of the situation must be weighed against the equity of the present owners. The petitioners are obviously and belatedly allured by a fortuitous possibility of unanticipated profit. *Page 456 
I am not unaware of the vulnerability of a final decree attributable to the failure to make due and sufficient inquiry of the occupant of the premises within the purview of such decisions as Hinners v. Banville, 114 N.J. Eq. 348, 168 A. 618;Merewood v. Denshaw, 139 N.J. Eq. 182, 50 A.2d 459;Bonded Certificate Corp. v. Wildey, 137 N.J. Eq. 564,45 A.2d 684; Simon v. Calabrese, 139 N.J. Eq. 361, 50 A.2d 626;Matarrese v. Matarrese, 142 N.J. Eq. 226, 59 A.2d 262;Bruns v. Mattocks, 65 A.2d 745.
I am not prepared, however, to decree that a due and diligent inquiry conducted in the enlightenment of all the reasonably observable and conjectural circumstances is necessarily deficient merely because it did not unmask and expose all of the concealed information. The pragmatical usefulness of court proceedings is not to be defeated by alleged delinquencies that in the existing circumstances would have been inconceivable and unimaginable. I do not, however, incline to mitigate the importance of due process of law, but there must be, at some stage, a finality to legal proceedings, particularly those in rem.
Whatever rights, if any, these petitioners now endeavor to assert are necessarily to be derived from a deed which through either neglect or design has never been recorded. Whereas the present owners in my judgment are innocent purchasers for value who had neither actual nor constructive notice of any imperfection in the title to the premises which they purchased in good faith, and which they have since improved and developed at a considerable expense. No one other than their grantors was in possession of the premises when they received their deed. Nothing in an examination of the foreclosure proceedings or of the public records would have apprised them of any deficiency in the title for which they bargained. Their grantors by their warranty represented that they had an indefeasible title. In view of the character of that deed, it would be somewhat fantastic to suppose that if the grantors had been interrogated, these purchasers would have been made aware of any irregularity in the title which the grantors would have divulged. It is not intimated that the purchase price was less than adequate. *Page 457 
Our statutory provisions contained in R.S. 46:22-1, N.J.S.A. and R.S. 2:29-27, N.J.S.A., and adjudications here cited in mortgage foreclosure suits exemplify the principle of a judicious and pragmatical policy. Vide, Buchanan Smock LumberCo. v. Brower, 95 N.J. Eq. 422, 123 A. 699; Marcy v.Larkin, 99 N.J. Eq. 429, 132 A. 90; Excellent Bldg. LoanAss'n v. Gersten, 108 N.J. Eq. 411, 155 A. 385; Matarresev. Matarrese, supra; Walter v. Introcaso, 135 N.J.L. 461,52 A.2d 676. For what cogent reason should a different principle be applied by the court in a suit to foreclose a tax lien?
Rather than to pendulate the title to the premises upon equitable terms of redemption which in the extreme circumstances of the present case presumably would be beyond the reach or acceptance of the petitioners, I conclude that for reasons of equity and justice the petition should be dismissed.