921 A.2d 483

I.E.'S, L.L.C., PLAINTIFF, v. TESSIE SIMMONS, GWENDOLYN HUDSON, CHARA CARMON, CAROLYN CARMON POPE, DAVID CARMON, AND 7 CLARK STREET, L.L.C., DEFENDANTS.

Superior Court of New Jersey
Law Division Middlesex County

Decided September 15, 2006.

*Michael G. Pellegrino,* for plaintiff (*Pellegrino & Feldstein, L.L.C.,* attorneys).

*Charles D. Whelan, III,* for 7 Clark Street, L.L.C., (*Charles D. Whelan, III,* attorney).

*W. Peter Ragan,* for the defendants, Gwendolyn Hudson, Chara Carmon, Carolyn Carmon Pope and David Carmon (*Ragan & Ragan, P.C.,* attorneys).

CHAMBERS, J.S.C.

This is a tax sale foreclosure case in which the defendant property owners moved to set aside the final judgment of foreclo-

sure.[1]  The record indicates that three of the defendant owners did not receive personal service of the tax foreclosure proceeding. They only became aware of the proceeding after the final judgment of foreclosure was entered and after the property was sold to a bona fide purchaser for value.  The court initially granted their application to vacate the final judgment of foreclosure.  The bona fide purchaser for value, a limited liability company named 7 Clark Street, L.L.C., has now moved to set the matter down for a plenary hearing, essentially seeking reconsideration of that decision.

In light of the additional factual submissions and legal analysis submitted to the court and the extreme consequences to the losing party of an adverse decision, this court has reconsidered the matter fully.  It, however, reaches the same conclusion as the earlier decision.  The final judgment of foreclosure will be set aside for the reasons set forth below.

I

The property in question is located at 7 Clark Street, in Iselin, New Jersey (Lot 9, Block 398A Tax Map for Woodbridge).  The four owners of the property at the time of the tax sale foreclosure proceedings were David Carmon, Carolyn Carmon Pope, and Gwendolyn Hudson, three siblings who inherited the property through their mother, and Chara Carmon, the widow of a deceased sibling.

One of the owners noted above, Gwendolyn Hudson, has been living at the property since her mother's death in 1997.  In addition, her brother David Carmon, one of the heirs, also lives on the premises.  Hudson was the executrix of her mother's estate, but she failed to issue a deed in the names of the heirs.  As a

---

[1] The decision in this case, first issued by letter opinion, is set forth herein after some modest editing.  The discussion in the letter opinion of ancillary issues regarding a plenary hearing and the form of order has been deleted.

result, public records continued to list the property in her mother's name. Hudson failed to pay taxes on the property.

The public records were further confused due to the multiple names held by the mother by virtue of her two marriages. Due to this confusion, defendants were not identified as her heirs. The mother, then known as "Tessie Carmon" and David Carmon, her husband at the time, had taken title to the property on October 26, 1957 in the names of "David Carmon and Tessie Carmon." After David Carmon died, Tessie married James Simmons, and title to the property was placed in both of their names by recorded deed. When they were divorced, title to the property went to Tessie by deed dated March 12, 1974, and recorded on May 1, 1974. Despite the fact that the divorce judgment allowed Tessie to resume the last name "Carmon," the deed placed title in the name of "Tessie Simmons (a/k/a Theresa Simmons), individually." However, when describing Tessie as a grantor, the deed refers to her as "Tessie Simmons (formerly known as Tessie Carman (sic), a/k/a Theresa Carman (sic) or Theresa Simmons)." The deed also refers to her earlier marriage to "David Carman (sic)" and recites that he is deceased.

Tessie died testate in 1997, naming her daughter Gwendolyn Hudson as Executor. Tessie's residuary estate (including the realty) was distributed as follows: seventy-five percent to Hudson, fifteen percent to her son David Carmon, five percent to her daughter Carolyn Pope, and five percent to her son Boyd Carmon or his heirs. The Surrogate's Office issued an executor certificate to Hudson on May 22, 1997. The document identifies the estate as the "Estate of Teresa Carmon a/k/a Theresa Carmon Simmons a/k/a Tessie Carmon Simmons." The Surrogate's Office indexed the estate under the Carmon name. Tax bills on the property remained in the name of "Tessie Carmon," and that is the name that appears on the tax certificate. Thus, the tax certificate and probate records were in the name of Carmon, while the deed was in the name of Simmons.

Due to Hudson's failure to pay taxes totaling $5,988.57, a tax sale certificate was sold to National Assistance Corp. at a public tax sale on June 27, 2001. The tax sale certificate was thereafter assigned on February 12, 2003 to Protective Investment Corp. which commenced the tax foreclosure action on July 23, 2003 against "Tessie Simmons a/k/a Theresa Simmons." Thereafter, on April 26, 2004 the tax sale certificate was assigned to a limited liability company named I.E.'s, L.L.C. which then became the plaintiff in the case.

When trying to serve Tessie Simmons, plaintiff learned that Simmons was deceased and that Hudson was her daughter. As a result, the complaint was amended on January 22, 2004, naming Hudson and the "heirs" of Simmons as defendants. The amendment to the complaint recites that "[t]itle of record to the premises became vested in Tessie Simmons (a/k/a Theresa Simmons), individually, by deed from Tessie Simmons (formerly known as Tessie Carman a/k/a Theresa Carman or Theresa Simmons)."

Counsel handling the tax foreclosure action explains that once he learned of Simmons' death, he conducted, in accordance with the customary practice, a search in the name of the record owner of the property which in this case was "Tessie Simmons a/k/a Theresa Simmons" in order to locate heirs. The surrogate's search under the Simmons name yielded no results, because the surrogate's records indexed the estate under the Carmon name only.

Personal service was made upon Hudson on February 19, 2004. In her certification of October 15, 2005, Hudson states that, upon receipt of the summons and complaint and the amendment to the complaint, she did not advise her siblings and her brother's widow of the action. However, she indicates that in February 2004, she did retain an attorney to give her advice on the matter.

Personal service was not made upon the other three heirs. However, service by publication was made upon the heirs of "Tessie Simmons a/k/a Theresa Simmons" on February 24, 2004, by notice in the *Home News Tribune*. The three heirs indicate in

certifications to the court that they were never served with a summons and complaint in the case, nor were they "contacted by any other person by any means with regard to the subject matter of the complaint."

Hudson did not file an answer, thereby defaulting on the complaint. An order was entered on April 12, 2004 setting a time and place for redemption. The amount required to be paid to redeem the property was $22,837.50 which included the amount due on the tax sale certificate and subsequent taxes and interest plus $1,044.75 in taxed costs. On May 3, 2004, Hudson was sent a copy of the Default and the Order Setting Time, Place and Amount of Redemption by certified mail; the green card came back signed. The property was not redeemed. The Final Judgment of Foreclosure was entered on June 8, 2004 barring the right of redemption and providing plaintiff, I.E.'s, L.L.C., with absolute and indefeasible clear title to the property. I.E.'s, L.L.C. then deeded the property to a limited liability company named Ilene's Kids, L.L.C. on October 25, 2004. Thereafter, on June 22, 2005, Ilene's Kids, L.L.C. deeded the property to 7 Clark Street, L.L.C., the bona fide purchaser for value. The price that 7 Clark Street paid for the property was $275,000.

It was not until the Writ of Possession was issued on June 10, 2005, that Hudson finally took steps to save the property by applying for a stay of the eviction and then applying to vacate the final judgment.

II

The statutory tax sale certificate procedures are designed to provide a mechanism for municipalities to collect real estate taxes when the owners do not pay them voluntarily. The legislature has provided that the statute "be deemed to be a remedial statute and to operate both prospectively and retrospectively, and be liberally construed to effectuate the remedial objects thereof." *N.J.S.A.* 54:5–3.

Under this mechanism, a municipality receives the tax monies from third parties who then are given a tax sale certificate on the

property. Specifically, the procedure works as follows. Under New Jersey law, unpaid municipal property taxes become a lien on the real property. *N.J.S.A.* 54:5–6. If the taxes remain unpaid by the 11th day of the eleventh month of the municipality's fiscal year, the municipality may sell to a third party at a tax sale its lien in the form of a tax sale certificate. *N.J.S.A.* 54:5–19. In exchange for the tax sale certificate, the municipality receives the amount of the taxes owed plus interest and costs of the sale. *N.J.S.A.* 54:5–31.

The purchaser of the tax sale certificate benefits from the purchase in one of two ways. The purchaser may receive payment from the owners if the owners redeem the certificate. Specifically, in order to redeem the certificate, the property owners must pay the purchaser the cost of the tax sale certificate plus interest, costs, and any subsequent municipal liens paid by the purchaser. *N.J.S.A.* 54:5–58. In the alternative, if the property is not redeemed, the purchaser will own the property. The purchaser secures ownership by filing an *in personam* foreclosure action to bar the right of redemption. *N.J.S.A.* 54:5–86. The action may be commenced if the certificate is not redeemed within two years of the tax sale. *Ibid.* (When the municipality is the purchaser, this time period is six months. *Ibid.*) While the right of redemption continues while the action is pending, it will be barred upon entry of a final judgment. *Ibid.* Once the right of redemption is barred, the purchaser owns the property, obtaining an absolute and indefeasible estate of inheritance fee simple in the property. *N.J.S.A.* 54:5–87. The statute provides that its provisions are to "be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured." *N.J.S.A.* 54:5–85.

### III

The defendants in this case are seeking to vacate the final judgment barring the right of redemption on the basis that

three of the four heirs did not receive notice of the action. Under *R.* 4:50–1, the court may provide relief from a final judgment under certain specified circumstances, including subparts (d) "the judgment or order is void" and (f) "any other reason justifying relief from the operation of the judgment or order." An application to vacate a judgment under *R.* 4:50–1 falls within "the sound discretion of the trial court" and when exercising that discretion the court should be "guided by equitable principles." *Housing Authority of Town of Morristown v. Little*, 135 *N.J.* 274, 283, 639 *A.*2d 286 (1994). An application to vacate a judgment under these two sections of the rule must be made within a reasonable time. *R.* 4:50–2. Further, since the judgment in this case was entered by default, the standards governing the vacation of default judgments apply. To vacate a default judgment, the applicant must make a showing of excusable neglect and a meritorious defense. *Marder v. Realty Construction Co.*, 84 *N.J.Super.* 313, 318, 202 *A.*2d 175 (App.Div.), *aff'd*, 43 *N.J.* 508, 205 *A.*2d 744 (1964). Further, an application to vacate a default judgment must be "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." *Id.* at 319, 202 *A.*2d 175.

Here, the defendants contend that the default judgment should be set aside because three of the defendants were not personally served, but were served only by publication. Where a judicial proceeding affects the life, liberty or property of individuals, the Due Process Clause of the Fourteenth Amendment, *U.S. Const.* amend XIV, § 1, requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 *U.S.* 306, 314, 70 *S.Ct.* 652, 658, 94 *L.Ed.* 865, 873 (1950) (citations omitted). In *Mullane*, the Supreme Court, recognizing the weakness of notice solely by publication, stated:

Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the informa-

tion will never reach him are large indeed. The chance of actual notice is further reduced when, as here, the notice required does not even name those whose attention it is supposed to attract and does not inform acquaintances who might call it to attention. In weighing its sufficiency on the basis of equivalence with actual notice we are unable to regard those as more than a feint.

[*Id.* at 315, 70 *S.Ct.* 652]

As a result of the limitations in service by publication, enhanced notice is required in a variety of proceedings. *New Brunswick Sav. Bank v. Markouski*, 123 *N.J.* 402, 418, 587 *A.*2d 1265 (1991). Due process of law demands that a person be given adequate notice of a tax sale before the person's property can be forfeited. *Jones v. Flowers*, 547 *U.S.* 220, 126 *S.Ct.* 1708, 1712, 164 *L.Ed.*2d 415, 423, 430 (2006). When notices sent to the property owner were returned as undelivered, additional reasonable steps were required under due process of law to notify the property owner of the sale. In a tax foreclosure sale, service by publication and posting does not meet due process requirements where the defendant's name and address are "reasonably ascertainable." *New Brunswick Sav. Bank, supra*, 123 *N.J.* at 418–19, 587 *A.*2d 1265 (quoting from *Mennonite Bd. of Missions v. Adams*, 462 *U.S.* 791, 800, 103 *S.Ct.* 2706, 2712, 77 *L.Ed.*2d 180, 188.)

New Jersey law recognizes that if personal service is defective, a judgment is deemed void and may be set aside under *R.* 4:50–1(d). *Jameson v. Great Atl. & Pac. Tea Co.*, 363 *N.J.Super.* 419, 425, 833 *A.*2d 626 (App.Div.2003). In that circumstance, the judgment may be vacated pursuant to *R.* 4:50–1(d) without the necessity of showing a meritorious defense. *Ibid.* In light of this law, the service upon the three heirs must be investigated.

Three of the four heirs were not personally served. Rather they were served by publication pursuant to *R.* 4:4–5. This rule permits service in an *in rem* or *quasi in rem* action by publication upon a defendant where the defendant cannot be served. *Ibid.* As noted above, the law recognizes that, realistically, service by publication is unlikely to reach the intended parties. As a result, "[s]ervice by publication is hardly favored and is the method of service that is least likely to give notice." *M & D Associates v.*

*Mandara,* 366 *N.J.Super.* 341, 353, 841 *A.*2d 441 (App.Div.2004) (citations omitted). Before a party may resort to this form of service, the rules, consistent with the constitutional law noted above, require that the party make a diligent inquiry to ascertain the person's identity. *R.* 4:4–5 and *R.* 4:26–5(b).

■ Here the three heirs were not identified because the surrogate's search was done using the Simmons name, the name set forth as grantee in the deed, although the surrogate's office had listed the decedent under the name of "Carmon." As a result, the surrogate's search did not reveal the names of the heirs. However, the Carmon name was the name on the very tax certificate that was being foreclosed. It was also the name reflected in the tax rolls for the property. Further, the 1957 deed names the decedent as Tessie Carmon and the 1957 deed identifies Tessie Simmons as being "formerly known as Tessie Carman(sic), a/k/a Theresa Carmon (sic) or Theresa Simmons."

■ Plaintiff's counsel wrote to Gwendolyn Hudson seeking the identification of the heirs, and she did not respond. Her irresponsibility as executor of the estate in failing to have a new deed executed after her mother's death, in failing to pay the taxes, in failing to take adequate steps to prevent the tax foreclosure, and in failing to respond to counsel's letter by providing the identity of the heirs, all contributed to this unfortunate situation. However, her conduct cannot be attributed to the other three heirs. Title to real estate vests in heirs immediately upon the testator's death, even before the will is probated. *Montclair National Bank & Trust Co. v. Seton Hall College of Medicine,* 96 *N.J.Super.* 428, 434, 233 *A.*2d 195 (App.Div.), *certif. denied,* 50 *N.J.* 301, 234 *A.*2d 406 (1967). As a result, the heirs all had legal title to the property when the proceedings commenced, and all were entitled to notice. In addition, the mere fact that the heirs did not take steps to assure that taxes were paid is not sufficient to constitute notice that their property is going to be lost for failure to do so. *See Jones v. Flowers, supra,* 126 *S.Ct.* at 1717 (where the court noted in a tax sale case that "the common knowledge that property may

become subject to government taking when taxes are not paid does not excuse the government from complying with its constitutional obligation of notice before taking private property.")

The three heirs would have been identified if the surrogate's search had been conducted under the name Carmon. When the surrogate search under the Simmons name was unsuccessful, reasonable diligence would have indicated that a subsequent search be conducted under the name Carmon since that was the name of the property owner on the tax sale certificate and it was listed as an alternative name for the property owner in the body of the deed.

Since the notice to the heirs was not sufficient, the court must next determine what is the appropriate relief. *See New Brunswick Sav. Bank, supra,* 123 *N.J.* at 425, 587 *A.*2d 1265. The remedy will depend on the circumstances present. *Ibid.* Speaking in the context of a sheriff's sale of real property in order to execute on a judgment, the Court has written: "The general rule is that when insufficient notice of a sheriff's sale is given, the preferred remedy is that which restores the status quo ante to the greatest extent possible." *Ibid.* (citation omitted). The difficulty in applying this rule here is that a bona fide purchaser for value has secured title to the property. Further, the purchaser, 7 Clark Street, L.L.C., argues that defendants have made the application too late.

IV

With respect to the 7 Clark Street, L.L.C. argument that defendants should be denied relief because the application is untimely, the record indicates that the final judgment of foreclosure barring the right of redemption was entered on June 8, 2004. It was not until the Writ of Possession was issued on June 10, 2005, one year later, that Hudson took steps to save the property. At that time, she applied for a stay of eviction, and then application was made to vacate the final judgment. The current title holder, 7 Clark Street, L.L.C., argues that *N.J.S.A.* 54:5–87 pro-

hibits the reopening of a tax foreclosure judgment more than three months from the date of the judgment. However, this statute is in conflict with *R.* 4:50-1, noted above, which allows a one year time period and, in other circumstances, a reasonable period of time to do so. In this circumstance, the rule controls since "[i]n foreclosure actions, where there is a conflict between a statute regarding practice and procedure, the court rules are generally paramount." *M & D Associates, supra,* 366 *N.J.Super.* at 351, 841 *A.*2d 441 (citations omitted). In addition, when a tax foreclosure judgment is entered against "unknown owners or claimants," the statute allows them a period of five years to challenge the judgment on the basis that there was an insufficient inquiry for their identity. *N.J.S.A.* 54:5–90.

The heirs took steps to vacate the judgment of foreclosure immediately upon notice of the eviction action. Under the circumstances here, where family members were still in possession of the property and where three of the heirs had no notice of the foreclosure action, other than through publication, the application will not be deemed untimely.

V

The court must consider whether the final judgment of foreclosure may be vacated because of the lack of notice to the three heirs where equities are present in favor of the current owner of the premises, a bona fide purchaser for value. Generally, "[t]he trial court may decide to void the sale 'if the party seeking relief seeks that relief promptly, lacked knowledge of the pendency of the sale and no intervening equities in favor of innocent third parties have been created.'" *New Brunswick Sav. Bank, supra,* 123 *N.J.* at 425, 587 *A.*2d 1265 (citation omitted). Here, 7 Clark Street, L.L.C. argues that the equities are in its favor since it is a bona fide purchaser for value.

When weighing the equities in this case, the facts present a difficult case. On one hand, a family faces an extreme forfeiture, namely the loss of property valued at $275,000 for failure to pay

$22,837.50 on a tax sale certificate. On the other hand, a bona fide purchase for value has paid $275,000 for the property.

Certainly, considerable equities lie in favor of the bona fide purchaser for value, since it paid full value for the property. Much of the problem in failing to identify the heirs rests on the shoulders of defendant Hudson due to her failure, as executrix of the estate, to issue a new deed in the heirs' names, and her failure to provide the identity of the heirs to the attorney handling the foreclosure action, despite his written request to her to do so. In addition, no final judgment of foreclosure would have been entered if Hudson had paid the taxes as she should have and taken adequate steps to save the property once it was in foreclosure. The situation was further exacerbated by the earlier conduct of the mother of the defendants in allowing her name to be placed on the deed as Simmons when she was using the last name Carmon. However, the three heirs are not responsible for any of this conduct.

In addition, the bona fide purchaser for value purchased the property knowing that the property had gone through a tax sale foreclosure. This circumstance placed on it further steps when examining title. In a certification submitted on behalf of 7 Clark Street, L.L.C., the principal owner of a title insurance agency acknowledged that further steps must be taken when a property has gone through foreclosure, including review of the filings in the foreclosure action, although he maintains that the search in the Simmons name was sufficient. However, as noted above, the tax sale certificate was in the name of Carmon. In addition, the fact that three unnamed heirs were served solely by publication also should have alerted the purchaser to the potential of notice problems.

Further, and most significantly, the bona fide purchaser for value took title to the property knowing that the defendant family in the tax sale foreclosure action was still in possession of the premises. New Jersey law has long recognized that a bona fide purchaser for value of real estate who purchases the property

knowing others are in possession of the property has a duty to make reasonable and diligent inquiry of the rights to the property by those in possession. *Hinners v. Banville,* 114 *N.J.Eq.* 348, 168 *A.* 618 (E. & A.1933). *Hinners* is a mortgage foreclosure case where owners were served by publication. The property was sold at a sheriff's sale and then purportedly sold to a bona fide purchaser for value. The sale to the bona fide purchaser for value was set aside since the family was in possession of the property, and the court held that the bona fide purchaser for value had a duty to make a reasonable investigation of the rights of the party in possession. *Id.* at 356–57, 168 *A.* 618. *See also, Michalski v. U.S.,* 49 *N.J.Super.* 104, 108–09, 139 *A.2d* 324 (Ch.Div.1958).

When the claimant is not in possession of the property, that fact is significant in weighing the equities in favor of the bona fide purchaser for value. In the case of *Twp. of Woodbridge v. Pavel,* 3 *N.J.Super.* 452, 66 *A.2d* 902 (Ch.Div.1949), due to a complex series of facts including an unrecorded deed and a family that used two different spellings of its name, the heirs of the owner of the property had not been personally served in a tax foreclosure suit. After final judgment was entered, the property was sold by the Township of Woodbridge to one couple who took possession of the property and then conveyed it to bona fide purchasers for value. The bona fide purchasers for value made considerable improvements on the property. Thereafter, the heirs sought to vacate the judgment and redeem the property. The court declined to do so for a number of reasons including the facts that the bona fide purchasers for value had no constructive or actual knowledge of the imperfection in title, that they had improved the property, and that, when they in good faith purchased the property, the claimants were not in possession of the property. The reasoning in the *Pavel* case is still sound. However, this reasoning is not applicable to the facts before this court, because a review of the records, including the tax sale certificate itself, would have revealed the Carmon name and because the family was still in possession of the property when the bona fide purchasers for value took title to it. (In addition, the bona fide purchaser for

value, 7 Clark Street, L.L.C., has made no improvements to the property since it has not taken possession of it.)

■ Due to the defective service upon the three heirs and after weighing the equities as noted above, this court finds that the judgment of foreclosure on the tax sale certificate must be vacated in order to allow the heirs an opportunity to redeem the property.[2] The entire judgment must be vacated even though personal service was made on one of the heirs, Gwendolyn Hudson, and the equities do not necessarily lie in her favor. However, where service on even one of multiple title owners is defective, operation of the tax sale law requires that the entire judgment be vacated. *M & D Associates, supra*, 366 *N.J.Super.* at 356, 841 *A.*2d 441.

VI

The facts of this case reveal the harshness of the tax sale certificate foreclosure proceedings in this State, where people with substantial equity in a property, for whatever reason, fail to pay property taxes and thereafter default in the tax sale certificate foreclosure proceedings. They may lose all of the equity in their homes even where the unpaid taxes and accumulated interest and fees are relatively minor. For example, in the case before this court the amount required to redeem the property was $22,837.50. By failing to pay that sum, the defendants almost lost property worth $275,000, as reflected in the sale price to 7 Clark Street, L.L.C., the bona fide purchaser for value.

This kind of forfeiture is not common, because most people faced with these circumstances will pay the amount due, whether through application of other assets or refinancing of the home or

---

[2] If the property is hereinafter redeemed by the individual defendants, then, equitably, the transaction between plaintiff, the holder of the tax sale certificate, I.E., L.L.C., and the bona fide purchaser for value, 7 Clark Street, L.L.C., must be undone. Judgment may then be entered in favor of 7 Clark Street, L.L.C. and against I.E., L.L.C. for the difference between the amount of redemption and the purchase price of $275,000.

even selling the home rather than forfeit it. However, occasionally people, due to illness, mental health problems, lack of sophistication, irresponsibility or other reasons, simply do nothing. The penalty for such inattention where there is substantial equity in the house can be severe, resulting in a disproportionate loss to one side and a windfall to the other. While the bona fide purchaser for value before this court received no windfall, the holder of the tax certificate and subsequent transferee received $275,000 on an outlay of $22,837.50.

Of course, the legislature's concern in fostering payment of property taxes and in barring the right of redemption to permit transfer of clear title to property involved in tax sale certificate foreclosures is legitimate. The system is equitable where property is abandoned or where the liens against it exceed its value. Nevertheless, in circumstances where the owners hold substantial equity in the property, the system can be Dickensonian. Until the Legislature devises a better system, courts of equity must do their best to balance the equities, taking into account the necessity of allowing the transfer of clear title and the need to compel the payment of property taxes against the necessity of ameliorating, in appropriate circumstances, the onerous impact of the procedure in circumstances where the party has remained in possession of the property and has substantial equity in it.

The motion for reconsideration is denied.