251 N.J. Super. 24 (1991)
596 A.2d 769
CAMDEN COUNTY BOARD OF SOCIAL SERVICES ON BEHALF OF C.C.-7205, MICHELLE BOYLE, PLAINTIFF,
v.
JOSEPH YOCAVITCH, DEFENDANT,
v.
JOSEPH BOYLE, THIRD PARTY DEFENDANT.
Superior Court of New Jersey, Chancery Division Family Part, Camden County.
Decided June 20, 1991.
*26 Neal A. Loebel for plaintiff.
*27 Philip A. Charamella for defendant.
James Snider, guardian ad litem, for Justin Camardo.
FRATTO, J.S.C.
The issue in this case is whether a natural father can avoid his obligation to pay child support based on the principle of equitable estoppel.
The facts in this case, which have been stipulated by the parties, are as follows.
During the appropriate period in 1981, Michelle Camardo engaged in sexual activities with Joseph Boyle and Joseph Yocavitch. As a result of this activity, a child was born on November 30, 1981. His birth certificate lists his name as Justin Aloysius Camardo. Michelle, at that time, named Boyle as the father. Thereafter, Michelle sought and obtained public assistance. The Camden County Board of Social Services, in 1983, attempted to obtain reimbursement from Boyle. HLA tissue testing was done and Boyle was excluded as the father of Justin by the report of May 23, 1983. No other putative father was named.
On April 14, 1984, Michelle and Boyle married and Justin lived with them. During the course of the marriage, another child, Christopher, was born on July 18, 1985. The parties separated on August 22, 1987 and a final judgment of divorce was obtained by Michelle on October 13, 1988. During the course of their marriage, the child was known as Justin Boyle. He was enrolled in the Gloucester Township public schools as Justin A. Boyle, with Joseph Boyle listed as the father. While the official birth certificate lists the child's name as Justin Camardo, a certificate of vital record from the State of New Jersey, Department of Health, lists the child's name as Justin Boyle. Ms. Camardo states that while the child has been called Justin Boyle all of his life, his name was never legally changed from Justin Camardo.
*28 In May 1988, Michelle sought child support from Boyle for both Christopher and Justin. Child support was granted for Christopher, but was denied for Justin. That order was consented to by both Michelle and Boyle. Custody of both Christopher and Justin was placed with Michelle. Subsequent to the divorce, a further child support order was entered on December 16, 1988 for Christopher alone. That also was consented to by Boyle. An additional child support order was consented to by Boyle for Christopher, increasing the prior payments on April 9, 1990.
While Boyle was married to Michelle, he treated Justin as his son, although he did favor Christopher over Justin and Justin was aware of this fact. Boyle represented to friends, acquaintances and the school authorities that Justin was his child.
Joseph Yocavitch knew that Michelle had two children and was married to Boyle. Yocavitch assumed that both children were the children of Boyle.
In 1990, Michelle, again, sought public assistance for Justin. At that time, she named Yocavitch as the father. The Camden County Board of Social Services brought the within action and service of the complaint for paternity and support was made on Yocavitch. It was then that Yocavitch first learned of the possibility that he was the father of Justin. Yocavitch was ordered to submit to HLA tissue testing and as a result of that test, Yocavitch was determined to be the biological father of Justin.
Yocavitch then filed a third-party complaint against Boyle, raising equitable estoppel and seeking to have Boyle held legally responsible to pay support on behalf of Justin.
Personal service could not be obtained upon Boyle and service was attempted by publication. No answer was filed by Boyle.

*29 Jurisdiction.

R. 4:4-4 sets forth a rule for service of a summons upon individuals in order to obtain in personam jurisdiction. Third-party plaintiff was unable to obtain personal service upon Boyle. He then attempted service under R. 4:4-5, which provides, inter alia, for service by publication in matrimonial actions when it shall appear by affidavit that a defendant cannot, after diligent inquiry, be served within the State.
Service upon Boyle by this method has not been obtained. The affidavit of counsel as to attempts at service upon Boyle indicate that the third-party defendant's place of employment in Mickletown, New Jersey, is known. Further, Boyle's home address is known and verified by his employer.
Service by publication is the mode of service least calculated and least likely to result in notice to a party and rarely, in fact, does. The affidavit of inquiry required by the rule is a jurisdictional requirement. A valid judgment cannot be entered based on service by publication where either diligent inquiry is not made or service can be made within the State. I find that while counsel's attempts to locate Boyle were "diligent," service can be made within the State. Boyle is a resident of New Jersey, his address is known, he is employed in New Jersey and the address of his employer is known.
I further find that attempted service under R. 4:4-5(c) is an inappropriate method of service where the cause of action seeks support. At first glance, it may appear that this action qualifies as a matrimonial action over which the court has jurisdiction, to bring it within the ambit of R. 4:4-5(c). This rule was last amended September 11, 1978, prior to the constitutional amendment creating the Family Part in 1983 and R. 5:1-2, which was adopted December 31, 1983. Under prior practice, matrimonial actions were governed by former R. 4:75 and support actions would have been within the jurisdiction of the abolished Juvenile and Domestic Relations Court.
*30 The marital status, itself, is a res which can be dealt with by the court under in rem jurisdiction, with service by publication under R. 4:4-5(c). Personal obligations deriving from the marital relationship or its termination, including support and alimony, require the acquisition of personal jurisdiction over the party (or quasi in rem jurisdiction). Ring v. Ring, 146 N.J. Super. 373, 374, 369 A.2d 993 (Ch.Div. 1977).
Matrimonial actions covered by R. 4:4-5 are thus limited to the res of the marriage itself. It would be an anomaly to refuse to enter a judgment against a party within the State upon whom service has been made by certified mail, with receipt acknowledged, under R. 4:4-4(a)(2) and yet permit service by publication under R. 4:4-5(c) upon that same party.
A holding that this court does not have jurisdiction over Boyle because of defective service does not, however, prevent Yocavitch from urging the proposition that he should be relieved from his obligation for child support because of the actions of Boyle.

Step-Parent's Obligation.
Defendant, in support of his position, cites A.S. v. B.S., 139 N.J. Super. 366, 354 A.2d 100 (Ch.Div. 1976), aff'd. 150 N.J. Super. 122, 374 A.2d 1259 (App.Div. 1977). In that case, neither party was the natural or adoptive parent of the child. The child was with them continuously from approximately one month after its birth. On the dissolution of the marriage, there was no natural or adoptive parent who could be held responsible for support of the child. The child relied on the parties to provide for his needs and treated them as his parents. He was the real party in interest in the proceedings. The court distinguished the facts in that case from the "step-father" cases.
The facts in that case are substantially different from the instant situation, where Justin has continuously known his real mother.
Miller v. Miller, 97 N.J. 154, 478 A.2d 351 (1984) is the controlling case. In Miller, the step-father developed a close *31 relationship with his step-children. They began using the step-father's name at school. The school records were changed to reflect the name of the step-father. He opposed any visitation with the natural father and, in fact, prohibited such visitation. He rejected all offers from the natural father to contribute to the support of the children.
Also, factually closer to the instant case is Ross v. Ross, 126 N.J. Super. 394, 314 A.2d 623 (J. & D.R.Ct. 1973), aff'd. 135 N.J. Super. 35, 342 A.2d 566 (App.Div. 1975) and MHB v. HTB, 100 N.J. 567, 498 A.2d 775 (1985). In both those cases, the step-father married the mother, who was either pregnant by another man or who had recently given birth to another man's child. The husbands at, or shortly after the time of birth knew, that they were not the father but, nevertheless, thereafter, represented themselves to both the child and the community as the natural father. A divided Supreme Court affirmed the judgment of the Appellate Division in MHB, applying the doctrine of equitable estoppel.
While the relationship between the parties in those cases and the instant case are quite similar, defendant in those cases against whom support was sought, was the step-father. Here, defendant is the natural father. None of the cited cases support defendant's position herein.
The burden to prove that Boyle's conduct established the three prerequisites to equitable estoppel  representation, reliance and detriment, is upon Yocavitch. The representation or misrepresentation must be made to him, the reliance must be made by him and the detriment must be to him. Since Yocavitch was not aware that he was the father of Justin until this litigation, the prerequisites for equitable estoppel do not exist. It might be argued that failure to inform him of the true identity of Justin as his son was a form of misrepresentation. Boyle's inaction or acquiescence in the nonaction of his wife, however, is not that type of "positive action interfering with the natural parent's support obligation" which Miller, supra, 97 *32 N.J. at 170, 478 A.2d 351, requires before the step-parent is bound. In this case, the natural father seeks to use equitable estoppel as a shield to avoid his own obligation. Miller will not allow him to do that.
The Miller Court stated that the burden is upon the natural father to show why he should not, in equity, be required to pay child support for his children. Reliance upon the step-father's conduct, placing him in a position where he is unable to meet his obligation, is one method of avoiding child support. No such reliance and inability is shown, nor has it been shown that he is unable to support the child. Further, even under Miller, where such reliance and inability is shown, it would be subject to modification when the natural father could meet his obligation.
The Miller Court emphasized that "the natural parent should always be considered the primary recourse for child support because society and its current laws assume that the natural parent will support his or her child." Id. at 169, 478 A.2d 351. While Justice Handler, in a separate concurring and dissenting opinion, would make it easier for children and their parents to collect from the step-parent, he concluded that "The support obligation, equitably imposed on the step-father in this case, need not endure indefinitely and does not eliminate or supercede the natural father's legal obligation to support his own children." Id. at 178, 478 A.2d 351.
Justice Handler, writing in MHB, repeated that the natural parent is the primary source of financial support for a child and that such a legal obligation is not abrogated by imposing an obligation of child support upon the step-parent, even under principles of equitable estoppel. 100 N.J. at 579, 498 A.2d 775.

Best Interest of the Child.
The law guardian argues that Yocavitch should not be compelled to pay support for Justin since the best interest of Justin, who has known no other father than Boyle, requires that the existence of Yocavitch be kept from him. The court *33 disagrees. The desire to spare Justin the painful knowledge that Boyle is not his biological father is understandable. It is probable that Justin will, one day, find out. Given the fact that Justin is well aware that Boyle favored Christopher, it may not be in his best interest to deny him the truth. Yocavitch, until the institution of this action, did not know of Justin's existence. This court cannot state, on the evidence before it, that Yocavitch will not attempt to establish a relationship with Justin. Given the absence of Boyle from his life, a new father figure in the person of Yocavitch, may be in the best interest of Justin.

Conclusion.
It is, therefore, ordered, that defendant, Yocavitch, is determined to be responsible as the natural father of Justin Boyle to the Camden County Board of Social Services;
It is further ordered that defendant submit, within 15 days from the date of this order, a copy of his 1990 tax return, his three most recent pay checks and a list of any other persons dependent upon him for support and, if by court order, a copy of any such order. The entry of this order shall not prohibit the Camden County Board of Social Services from seeking contribution from Boyle, in the event payment cannot be obtained from Yocavitch.
Counsel for the Camden County Board of Social Services shall prepare an appropriate order.