841 A.2d 441 (2004)
366 N.J. Super. 341
M & D ASSOCIATES, Plaintiff-Respondent,
v.
Philip MANDARA and Carmelo Mandara, Defendants-Appellants, and
Maryann Mandara, the First National Bank of Chicago, as Trustee under that Certain Pooling and Servicing Agreement dated as of April 1, 1995 for RTC Mortgage, Pass-Through Certificates, Series 1995-1, Mrs. Philip Mandara, wife of Philip Mandara, and Mrs. Carmelo Mandara, wife of Carmelo Mandara, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 2003.
Decided February 6, 2004.
*443 Young Johnny Oh argued the cause for appellants (Koulikourdis & Associates, attorneys; Mr. Oh, on the brief).
Susan B. Fagan-Limpert argued the cause for respondent (Robert A. Del Vecchio, attorney; Ms. Fagan-Limpert, of counsel, and on the brief).
No other parties participated in this appeal.
*444 Before Judges PETRELLA and FUENTES.
*442 The opinion of the court was delivered by PETRELLA, P.J.A.D.
In this appeal, defendants Philip Mandara and Carmelo Mandara challenge the denial of their motion to vacate a foreclosure judgment in connection with tax sale certificates held by plaintiff M & D Associates (M & D).
Defendants argue that the motion judge erred because substantial defects in service of process rendered the judgment void under R. 4:50-1(d), and exceptional circumstances were present which warranted relief under R. 4:50-1(f). Specifically, they contend that the one-year time limitation does not bar the relief requested by defendants on the basis of R. 4:50-1(d) and that equitable considerations justify relief under R. 4:50-1(f).
On December 17, 1984, Philip Mandara and Carmelo Mandara, brothers, bought a two-family house for $80,000 at 62-66 Maitland Avenue in Paterson (Property) and executed a mortgage to Prospect Park Savings and Loan Association to secure a $70,000 loan. The deed specified the grantees as "Philip Mandara, unmarried, and Carmelo Mandara, married but acting alone." In the 1990's, the mortgage was assigned to First National Bank of Chicago (FNBC), "as Trustee under that certain Pooling and Servicing Agreement dated as of April 1, 1995 for RTC Mortgage Pass-Through Certificates, Series 1995-1." The mortgage was later transferred to Bank of America, but it is unclear whether this assignment occurred before or after the filing of the complaint. The Mandara brothers assert that they satisfied all their mortgage payments, including property taxes.
Meanwhile, on March 15, 1994, M & D purchased from the City of Paterson a tax sale certificate for the Property for an unpaid 1993 sewer usage charge in the amount of $97.06. On November 18, 1994, Robert U. Del Vecchio Pension Trust (Trust) purchased a second tax sale certificate, later assigned to M & D, that included unpaid 1993 and 1994 sewer usage charges of $178.20.[1] On December 5, 1995, a third tax sale certificate was purchased by the City of Paterson for $137.23 for unpaid sewer usage charges. This certificate was sold to M & D in June 1997 for $2,194.93. M & D subsequently obtained a fourth tax certificate in July 1997 for $53.50, apparently for unpaid property taxes.
M & D instituted an action on August 19, 1999 in the Chancery Division to foreclose on the tax sale certificates. The Paterson tax office records, the Bank of America's file, and the Mandaras' 2001 IRS mortgage interest statement listed only Philip's address, 238 Madison Avenue in Paterson. A sheriff's deputy served process on Philip Mandara at this address by leaving the summons and complaint with his then seventeen-year-old stepdaughter, Maria Miranda.[2] At the Madison Avenue address, Philip Mandara had received certified mailings in May 1999, which M & D claims contained a pre-action notice of foreclosure. M & D also made unsuccessful certified mailings to that address for Carmelo.
*445 Personal service had also been attempted at the same address for Carmelo Mandara, but was unsuccessful. The return of service noted that Maria Miranda told the sheriff's deputy that Carmelo never lived there. M & D's attorney sent a letter to Philip Mandara dated October 22, 1999, requesting Carmelo Mandara's address for the purposes of the foreclosure action. M & D stated that it did not receive a response to its letter.
Because personal service upon Carmelo was never completed, M & D attempted service by publication. On October 27, 1999, publication of a summons to Carmelo appeared in a newspaper in Passaic County. On February 16, 2000, M & D filed an affidavit of inquiry purporting to demonstrate its diligent efforts to locate Carmelo Mandara and in support of the service by publication. Besides his attempts at personal service and the letter to Philip Mandara, M & D's attorney stated in that affidavit that he contacted the Passaic County Voter Registration Board, checked the telephone book, and reviewed the records of the tax office. First National Bank of Chicago, the mortgagee bank, was allegedly served by certified mail on its alleged successor in Chicago, Bank One.
After the defendants failed to file any answer, M & D obtained an order setting amount, time and place of redemption on February 16, 2000. This order determined the redemption amount as $4,088.28 and fixed April 19, 2000 as the last date for redemption. M & D gave notice of the order to redeem by ordinary mail to Philip Mandara and Bank One on February 23, 2000. Pursuant to the order, M & D also published a notice to redeem to Carmelo Mandara. On April 27, 2000, M & D obtained a final judgment of foreclosure against all the defendants after no party sought redemption.
On February 21, 2003, Philip and Carmelo Mandara filed a motion to vacate the final judgment. The Mandaras assert that the value of the Property is now about $200,000.
In his certification in support of the motion, Carmelo Mandara stated that he only recently became aware that the Property was foreclosed, that he has been living at 19 Kossuth Street in Haledon since 1990, and that a search of the Division of Motor Vehicles records would have revealed his Haledon residence. M & D responded that personal service was directed to the Madison Avenue address for the individual defendants because it was the address on file with the Paterson tax office.
Philip Mandara certified that he did not receive notice of the final judgment until he learned of a letter containing the final judgment from M & D to the tenants on the Property and directing rent payments to it. He also certified that the property taxes were being paid by the mortgagee and that mortgage payments and taxes were considered current. That does not appear to be disputed. M & D's attorney certified that the "letter and the final judgment went out in approximately June of 2001 [and] M & D began collecting rents the next month...." He also stated that Philip Mandara visited his office in July 2001, seeking a resolution of the matter and that Carmelo's wife called in the fall of 2002, confirming her and her husband's knowledge of the foreclosure proceeding.
Although M & D began to receive the rent from the Property in mid-2001, the Mandaras submitted documents which showed that they had continued to make the mortgage and tax payments for the entire 2001 year. Curiously, in the end of 2002, Bank of America, presumably the successor-mortgagee, and who may have assumed its lien on the Property was still *446 secure, notified Philip and Carmelo that it had assigned the mortgage to Beal Bank.
Philip Mandara also certified that he had retained several attorneys in 2001 after learning of the final judgment. His first attorney told him to continue to make the mortgage and tax payments while the case was being negotiated. A second attorney then received his file because the first attorney received a judicial appointment in January 2002. The Mandaras ultimately became dissatisfied with the second attorney's representation and in October 2002 retained their present attorneys.
Based on the certifications submitted, the Chancery Judge denied the motion to vacate. The judge stated that Philip and Carmelo failed to meet the exceptional circumstance requirements of R. 4:50-1(f), which the judge considered the only basis for relief. The judge also found that Philip was properly served, but made no findings as to service by publication on Carmelo Mandara. However, the judge did find that both Philip and Carmelo Mandara knew about the case in time to make an appropriate motion to vacate the judgment. The judge believed Philip Mandara knew of the action at least since July 2001, because he visited M & D's attorney when M & D started collecting rent. Instead of waiting almost two years, the judge reasoned that Philip Mandara should have immediately moved to vacate the judgment. Similarly, the judge found that Carmelo Mandara had known of the action at least in the fall of 2002 because his wife called M & D's attorney's office and confirmed her awareness of the suit.

I.
The Mandaras on this appeal seek to overturn the final judgment of foreclosure on the basis of a lack of notice to the owner and exceptional circumstances. They assert the judgment is void as to Carmelo Mandara for lack of service of process.
An application to vacate a judgment based on R. 4:50-1 is within the sound discretion of the trial court and "should be guided by equitable principles in determining whether relief should be granted or denied." Housing Auth. of the Town of Morristown v. Little, 135 N.J. 274, 283, 639 A.2d 286 (1994). The application is "viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Marder v. Realty Constr. Co., 84 N.J.Super. 313, 319, 202 A.2d 175 (App. Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964). In the tax sale certificate foreclosure context considerations of public policy and equity are also taken into account. See Bron v. Weintraub, 42 N.J. 87, 94-96, 199 A.2d 625 (1964) (such principles applied even though Court was "not aware of any precedent precisely on point, although reference could appropriately be made to the established hostility toward so-called `heir hunting'"). However, where the motion is based on R. 4:50-1(f), for "any other reason justifying relief from the operation of the judgment or order," the motion must be supported by "truly exceptional circumstances" in the interests of finality of judgments. Little, supra (135 N.J. at 286, 639 A.2d 286).
The Chancery Judge did not consider the motion under R. 4:50-1(d), but rather stated:
This is a motion to vacate a final judgment of default in a tax foreclosure case that was entered on April 27th, 2000. The motion is filed well beyond the one year time limitation set forth in 4:50-1 et seq. for motions to reopen even final judgments. Defendants, therefore, can only rely on subsection (f) of 4:50-1 which requires that the movant show *447 that the circumstances are exceptional and that enforcement of the judgment would be unjust, oppressive or inequitable.
The Mandaras argue that the judge should have considered the motion under R. 4:50-1(d) because service was improper on both Philip and Carmelo and the judgment was void. They also argue that R. 4:50-1(d) is not necessarily limited to one year, but can be brought within a reasonable time.
M & D served Philip Mandara under R. 4:4-4(a)(1) by delivering the summons and complaint to his residence to Maria Miranda. Under R. 4:4-4(a) personal service may be made:
Upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein....
On the other hand, Carmelo Mandara was served by publication under R. 4:4-5(c). Such service is available:
in actions affecting specific property, or any interest therein, or any res within the jurisdiction of the court, or in matrimonial actions over which the court has jurisdiction, wherein it shall appear by affidavit of the plaintiff's attorney or other person having knowledge of the facts, that a defendant cannot, after diligent inquiry, be served within the State....
Service under this method mandates certain procedural requirements in the interest of due process, including an affidavit of inquiry. R. 4:4-5(c)(2).
We initially note that the standards in the court rules govern the motion to vacate a default judgment of foreclosure. While the tax sale law states in N.J.S.A. 54:5-87 that "no application shall be entertained to reopen the judgment after three months from the date thereof," the rules allow a period of one year to bring the motion based on R. 4:50-1(a), (b), or (c). Otherwise, the motion to vacate must be brought within a reasonable time if the judgment is void under R. 4:50-1(d). R. 4:50-2; Citibank, N.A. v. Russo, 334 N.J.Super. 346, 353, 759 A.2d 865 (App. Div.2000); see also Pressler, Current N.J. Court Rules, Comments R. 4:50-2 (Gann). In foreclosure actions, where there is a conflict between a statute regarding practice and procedure, the court rules are generally paramount. Bergen-Eastern Corp. v. Koss, 178 N.J.Super. 42, 45, 427 A.2d 1132 (App.Div.), certif. granted, 87 N.J. 351, 434 A.2d 94, appeal dismissed, 88 N.J. 499, 443 A.2d 713 (1981); Borough of New Shrewsbury v. Block 115, Lot 4, Assessed to Hathaway, 74 N.J.Super. 1, 8, 180 A.2d 387 (App.Div.1962). The defendants ultimately challenge the service, which is a jurisdictional issue, but the right to attack the judgment on this basis nevertheless may be waived if not brought within a reasonable time. Bascom Corp. v. Chase Manhattan Bank, 363 N.J.Super. 334, 340-341, 832 A.2d 956 (App.Div.2003); Wohlegmuth v. 560 Ocean Club, 302 N.J.Super. 306, 316, 695 A.2d 345 (App. Div.1997).
Carmelo Mandara's motion to vacate was, under the circumstances, brought within a reasonable time. The final judgment was filed on April 27, 2000, but the Chancery Judge attributed actual knowledge on the part of Carmelo Mandara as of the fall of 2002. The judge assigned constructive knowledge of the final judgment as of July 2001, when M & D requested payments of rent on the Property from the tenants. There is no explanation why M & D had waited until July 2001 *448 to act on an April 2000 judgment. Nor does the record reflect whether M & D ever served either Mandara brother with the final judgment. See R. 1:5-1(a). Thus, they would not have had actual knowledge of it until at least June 2001, when a copy of the final judgment was sent to the tenants on the Property.[3] Failure to establish actual notice to Carmelo buttresses the view that it was not unreasonable to move to vacate the April 2000 judgment in February 2003.
Estoppel and laches would not bar Carmelo Mandara from seeking to vacate the judgment or challenging the service of process. "[L]aches may be applicable to bar an action to set aside a void judgment." Last v. Audubon Park Assocs., 227 N.J.Super. 602, 608, 548 A.2d 236 (App.Div.1988), certif. denied, 114 N.J. 491, 555 A.2d 613 (1989). Here, there is insufficient reason to apply estoppel. A motion to vacate filed in 2003 for a 2000 judgment is not estopped simply by the passage of time if Carmelo Mandara had no notice prior to the fall of 2002, and there was a question of jurisdiction.
Besides the timing of the motion, R. 4:50-1(d) also requires that "the judgment or the order is void." Defective service that results in a "substantial deviation from service of process rules" typically makes a judgment void. Jameson v. Great Atl. & Pac. Tea Co., 363 N.J.Super. 419, 425, 833 A.2d 626 (App. Div.2003); Sobel v. Long Island Entm't Prods., Inc., 329 N.J.Super. 285, 293, 747 A.2d 796 (App.Div.2000). If a judgment is void in this fashion, a meritorious defense is not required to vacate under the rule. Jameson, supra (363 N.J.Super. at 425, 833 A.2d 626).
Service by publication is hardly favored and is the method of service that is least likely to give notice. Modan v. Modan, 327 N.J.Super. 44, 48, 742 A.2d 611 (App.Div.2000); see also Mennonite Bd. of Missions v. Adams, 462 U.S. 791, 794-800, 103 S.Ct. 2706, 2709-2712, 77 L.Ed.2d 180, 184-188 (1983). R. 4:4-5 specifically requires a diligent inquiry prior to service under this rule.
As contrasted with the service by court order as found in R. 4:4-4(b)(3) and 4:4-5(d), R. 4:4-5(c) is an alternative method of service of process, but it must be consistent with due process. For the plaintiff who has chosen to serve by R. 4:4-5(c), the rule requires an affidavit that a diligent inquiry has been made and that the defendant is not available for service within the State. Cf. Camden County Bd. of Soc. Servs. on Behalf of Boyle v. Yocavitch, 251 N.J.Super. 24, 596 A.2d 769 (Ch. Div.1991) ("A valid judgment cannot be entered based on service by publication where either diligent inquiry is not made or service can be made within the State."). In order to satisfy due process to the defendant, we hold that in this procedural instance, the review as to whether there was diligent inquiry must be carefully scrutinized.
Here, M & D attempted to serve Carmelo Mandara by publication under R. 4:4-5(c).[4] Its attorney submitted an affidavit of inquiry detailing his unsuccessful attempts to locate Carmelo by checking with the tax office, the telephone directory, *449 and purportedly the Passaic County voting records. Carmelo Mandara's Haledon address, where he had resided for a number of years, was actually listed in the Passaic County voting records as well as the Division of Motor Vehicle records. Thus, if M & D was able to accurately check those sources it would have found that Carmelo was available for service within the State at the time of publication.
In these circumstances, the issue is whether the inquiry made by the plaintiff prior to the publication was sufficient to warrant its method of service. Carmelo Mandara is entitled to a diligent inquiry on the part of M & D before substitute service can be effectively made. Having made no findings on the issue of diligent inquiry, the trial judge mistakenly exercised her discretion in her disposition of the matter.
We are of the view that particularly in situations like the one involved in this case, where there is substituted service, as well as a tremendous disparity between the amount due on the tax certificates and the value of the property subject to foreclosure (here approximately $4,500 versus potentially $100,000 to $200,000 for the property), careful scrutiny of the affidavit of inquiry requires the Chancery Judge to demand more than cursory inquiries or recitals not only as a matter of due process, but also of fundamental fairness. See Bron v. Weintraub, supra (42 N.J. at 93-96, 199 A.2d 625). The Chancery Judge in such foreclosure cases should be alerted when the face of the documentation indicates that a significant windfall might result if adequate scrutiny of the affidavit of inquiry is not undertaken.
Here, when on the surface M & D was to receive such a windfall, it was appropriate to require an expanded inquiry of any alleged diligent inquiry. This is especially so where M & D knew that one of the owners of the Property was not residing, and had not resided with the other owner and there was no evidence of communication between them.[5] Whether this situation might have required the hiring of an investigator rather than superficial checking of phone directories[6] and tax rolls is something we leave for future cases. In any event, we note defense counsel's argument that Carmelo's address can be found in the Division of Motor Vehicle records and at the Passaic County Voter Registration Board.[7] A diligent *450 inquiry requires more than a search with election officials for the particular town where the property was located and where coincidentally one of the individuals on the deed resided. Moreover, a mere recital that a person does not appear in the voting records (apparently erroneous in this case), should not be based on hearsay statements, but requires a certification from a custodian of documents from the Board of Election. In this information age, adequate search instruments are available by computer or other means to make searches relatively simple and inexpensive. In sum, we are satisfied that there was not a sufficient diligent inquiry under the circumstances of this case, and that service by publication was improper and rendered the judgment void as to Carmelo Mandara.
On the other hand, service on Philip Mandara was proper. He was served at an address where his seventeen-year-old stepdaughter was able to receive service on his behalf. Service was complete under R. 4:4-4(a) as to Philip Mandara and he did not show that Maria Miranda was not a "competent member of the household."
The order of the Chancery Judge is vacated as to Carmelo Mandara.

II.
Based upon the previous discussion, the action against Carmelo Mandara was never properly commenced.
N.J.S.A. 54:5-86 provides that
an action to foreclose the right of redemption may be instituted at any time after the expiration of the term of two years from the date of sale of the tax sale certificate. On instituting the action the right to redeem shall exist and continue until barred by the judgment of the Superior Court.
A valid judgment would effectively end the owner's right of redemption and vest title of the property in the holder of the certificate in accordance with N.J.S.A. 54:5-86. However, if any eligible entity timely redeems, the tax sale certificates are cancelled and no transfer of title occurs. N.J.S.A. 54:5-54 to 55.
In view of our decision, the operation of the tax sale law requires that the entire judgment must be vacated as void based upon equitable considerations, despite the fact that only Carmelo suffered defective service. The tax sale law is clear that any eligible individual is entitled to redeem, and upon such redemption the certificates are cancelled. The transfer of title is contingent upon the non-redemption of the certificates at the time of judgment. Therefore, Carmelo could have unilaterally prevented the entire transfer of title had he had notice of the action and timely redeemed. While Carmelo could have redeemed at any time, even prior to the action, M & D still purported to obtain title by a judgment that did not fully encompass the redemptive rights of all the defendants. Because M & D could have been prevented from obtaining any ownership interests by Carmelo's exercise of his redemption rights, we are satisfied that the entire judgment must be vacated.
For these reasons, the issue of whether Philip Mandara is entitled to vacate the judgment under R. 4:50-1(f) is moot.

III.
The vacation of the final judgment will not result in any injustice to M & D. It is entitled to receive from the defendants the value of the tax certificates, including interest and costs, and reimbursement of any taxes paid. If those are not received it may file another complaint to foreclose on the tax certificates. However, vacation *451 of the judgment also means that M & D must account for rents received on the Property and give appropriate credits therefore to the Property owners.
We reverse and remand to the Chancery Division for further proceedings consistent with this opinion. No costs to any party.
NOTES
[1] M & D and the Trust operated at the same P.O. Box address. Robert U. Del Vecchio was the trustee of that trust. We are informed that the attorney for M & D is a relative of that trustee.
[2] Philip Mandara certified that he never received the service papers from his daughter.
[3] This is not to say, however, that had the final judgment been timely served and the brothers knew about the judgment in 2000, a claim for relief under either R. 4:50-1(a), (b), or (c) would have been viable.
[4] This action was not brought under the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq., and the publication and service requirements of that statute do not apply. See R. 4:64-7.
[5] The letter sent by M & D's attorney to Philip requesting Carmelo's address was dated October 22, 1999, while the summons was published on October 27, 1999. M & D had also enclosed a self-addressed stamped envelope for Philip's reply. Since October 22, 1999 was a Friday and that October 27 was the Wednesday immediately following, this attempt to locate Carmelo prior to publication seemed rather perfunctory.
[6] We are aware that unlisted names do not appear in telephone directories.
[7] On August 19, 2003, another panel of this court denied defendants' motion to supplement the record on appeal with copies of the Passaic County Voter Registration Board records showing that at all relevant times his Haledon address was listed and that plaintiff's attorney's certification appeared to be in error (unless the check was solely limited to the City of Paterson rather than the County of Passaic). Aside from the issue of whether the voting records are public records subject to judicial notice, see N.J.R.E. 201(b)(3) and (4), we could reconsider that order in the interests of justice. We might also be able to take judicial notice from the motion papers filed that the Passaic County voting records contained the name and address in Haledon of Carmelo Mandara, confirming defense counsel's assertion at oral argument. See R. 2:5-5(b).

Apparently, no effort was made to check social security records, but this may have been because a social security number was not known.