NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0419-19

BV001 REO Blocker, LLC,

 Plaintiff-Respondent,

v.

53 WEST SOMERSET STREET
PROPERTIES, LLC,

 Defendant-Appellant,

and

WELLS FARGO BANK, N.A.,

 Defendant.

_____

APPROVED FOR PUBLICATION

March 31, 2021

APPELLATE DIVISION

Submitted January 21, 2021 – Decided March 31, 2021

Before Judges Ostrer, Vernoia and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. F-000856-19.

Law Offices of Peter N. Laub Jr. & Associates, LLC, attorneys for appellant (Peter N. Laub, Jr. and M. Teresa Garcia, on the briefs).

Robert A. Del Vecchio, LLC, attorneys for respondent (Susan B. Fagan-Rodriguez, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, P.J.A.D.

To avoid a financial debacle, a commercial-property owner asked the trial court to vacate a final default judgment of foreclosure of a tax sale certificate. The owner did not know the tax sale certificate existed until judgment was entered. The trial court denied defendant relief. It cited the tax sale certificate's validity, and defendant's failure to ensure its taxes were paid. But, under the Tax Sale Law, an owner need not challenge the tax sale certificate, nor excuse its own past non-payment, before redeeming its property. And here, defendant 53 West Somerset Street Properties, LLC, presented compelling reasons for its failure to answer the foreclosure complaint; it promptly moved to vacate the default judgment; and it was prepared to redeem the property. Based on those exceptional circumstances, the trial court should have exercised its broad equitable power under Rule 4:50-1(f) and granted defendant relief from the judgment. Therefore, we reverse.

I.

The facts are largely undisputed. The real property at the heart of this case, 53 West Somerset Street in Raritan, includes a bar and restaurant. Defendant, a limited-liability company, owns the real property, and Assunta

2

Tummolillo is defendant's sole member. She is also the sole member of Assunta, LLC, which owns the restaurant and bar.

In 2014, Tummolillo entered into an executory contract to sell her business assets and real property. The two buyers agreed to pay Tummolillo $650,000 over five years, and to pay all property taxes. In the meantime, they were permitted to operate the restaurant and bar as their own. After five years and receipt of the full purchase price, Tummolillo would transfer ownership.

Unbeknownst to Tummolillo, the buyers did not pay the taxes. The tax bills and delinquent notices apparently went to the business address, and Tummolillo never arranged to receive duplicates. By late 2015, the Borough of Raritan sold to U.S. Bank a tax sale certificate on the property.[1] Tummolillo received no actual notice.

More than two years after that, one of the buyers appointed himself registered agent for the LLC — without Tummolillo's knowledge or consent. So, when plaintiff filed its foreclosure complaint in early 2019, it attempted to serve the LLC through the imposter. Tummolillo was still in the dark when plaintiff obtained entry of default, the court set the amount, time and place of

---

[1] On July 24, 2019, the court substituted "BV001 REO Blocker, LLC," as plaintiff, replacing "U.S. BANK AS CUSTODIAN FOR BV TRUST 2015-1."

redemption, the tax collector certified non-redemption, and plaintiff moved for default judgment.

Tummolillo first learned of plaintiff's motion while preparing to sue the buyers — who had defaulted in their payments to her — for breach of contract. According to defendant's counsel, only one or two days after Tummolillo's discovery, the court entered judgment.

Defendant raced to rectify the situation. Less than a week after the court entered judgment, defendant served its motion to vacate, so it could file an answer and redeem the property.[2] In support, Tummolillo and defendant's counsel certified many of the facts we have set forth.

During the motion hearing, defendant's counsel argued that the court should vacate the judgment to allow defendant to redeem. Counsel noted that the LLC's equity in the property far exceeded the amount owed, and that defendant had made payment arrangements.

Plaintiff's counsel responded that the tax sale certificate was valid; service was proper because plaintiff was entitled to rely on the public record of

---

[2] Default judgment was entered on July 25, 2019. Counsel certified that he served the motion papers by mail on July 31, 2019. The court filed the motion papers on August 12, 2019.

the registered agent; and defendant should have diligently ensured that its taxes were paid.

In its written opinion, the court held that defendant was barred from challenging the certificate because two years elapsed after the tax certificate was recorded. And, defendant's claim that the buyer fraudulently registered himself as agent was not a germane defense to the foreclosure action. The court also stated that, because defendant remained title owner, it was responsible to ensure that taxes were paid. The court stated that Tummolillo's failure to monitor her (that is, her company's) property's taxes "does not support her plea to this Court of Equity to ignore statutory requirements."

II.

A motion to vacate default judgment implicates two oft-competing goals: resolving disputes on the merits, and providing finality and stability to judgments. See Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977) (stating that Rule 4:50-1 "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case"); Nowosleska v. Steele, 400 N.J. Super. 297, 303 (App. Div. 2008) (stating that courts have liberally exercised the power to vacate default judgment "in order that cases may be decided on the merits").

5

In balancing the two goals, "[a] court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (alterations in original) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div. 1964), aff'd, 43 N.J. 508 (1964)). Although the movant bears the burden of demonstrating a right to relief, see Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003), a court should resolve "[a]ll doubts . . . in favor of the part[y] seeking relief," Mancini, 132 N.J. at 334.

Ultimately, "equitable principles" "should . . . guide[]" a court's decision to vacate a default judgment. Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994); see also Pro. Stone, Stucco & Siding Applicators, Inc. v. Carter, 409 N.J. Super. 64, 68 (App. Div. 2009) (stating that "Rule 4:50 is instinct with equitable considerations"). Therefore, a Rule 4:50-1 decision rests within "the sound discretion of the trial court," and we will not disturb it "absent an abuse of discretion." Mancini, 132 N.J. at 334.

However, a trial court mistakenly exercises its discretion when it "fail[s] to give appropriate deference to the principles" governing the motion, see Davis v. DND/Fidoreo, Inc., 317 N.J. Super. 92, 100-01 (App. Div. 1998)

6

(reversing denial of motion to vacate); relies "upon a consideration of irrelevant or inappropriate factors," Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (defining abuse of discretion); or rests its decision "on an impermissible basis," U.S. Bank N.A. v. Guillaume, 209 N.J. 449, 467 (2012) (discussing standard of review of order under Rule 4:50-1).

We conclude that the trial court erred in denying defendant relief under Rule 4:50-1(f) ("any other reason justifying relief from the operation of the judgment"). The trial court discounted the equitable principles that favor granting the motion, mistakenly concluding that if defendant lacked a defense to the tax sale or the right to foreclose, defendant was not entitled to relief from the judgment and to a chance to redeem. We do not reach defendant's argument that it was also entitled to relief under subsection (a) ("excusable neglect"), which also requires a showing of a "meritorious defense." See Guillaume, 209 N.J. at 469. Given the motion's timing, we need not guard against defendant repackaging a subsection (a) motion as a subsection (f) motion to avoid Rule 4:50–2's one-year deadline for filing the former, but not the latter. See Baumann v. Marinaro, 95 N.J. 380, 395 (1984) (stating that relief is available under subsection (f) "only when the court is presented with a

reason not included among any of the reasons subject to the one year limitation").[3]

Nor do we decide defendant's contention that the court should have vacated the judgment under subsection (d) ("the judgment or order is void") because of defective service. See Jameson, 363 N.J. Super. at 425 (stating that a default judgment is void if "taken in the face of defective personal service," if the defect is so significant that it "cast[s] reasonable doubt on proper notice").[4]

---

[3] While we decline to reach the subsection (a) argument, we note that a meritorious defense is required so that "there is some possibility that the outcome" after restoration "will be contrary to the result achieved by the default." See 10A Charles A. Wright et al., Federal Practice & Procedure § 2697 (4th ed. 2020). See Guillaume, 209 N.J. at 469 (stating that a meritorious defense is required to avoid a "futile proceeding") (quoting Schulwitz v. Shuster, 23 N.J. Super. 554, 561 (App. Div. 1953)). Certainly, redemption would change the result otherwise achieved by default.

[4] Defendant also raised lack of service as an affirmative defense in its proposed answer. Defendant's subsection (d) argument raises a knotty question: is service on an imposter valid if the imposter appears to be a duly-registered agent with the New Jersey Division of Revenue. We have found authority supporting both sides of the question. One federal court has held, "Where a person holds him/herself out to be [an agent], and the circumstances objectively support a reasonable inference that the defendant would receive fair notice, the service should be sustained." Kohler Co. v. Bold Int'l FZCO, 422 F. Supp. 3d 681, 715 (E.D.N.Y. 2018), report and recommendation adopted in relevant part, 422 F. Supp. 3d 681 (E.D.N.Y. 2018). Yet Professor Moore broadly states, "A summons may be quashed or a defendant may be dismissed from the action if service of process is made on a purported agent

A-0419-19

Subsection (f) affords relief in "'exceptional circumstances'" and "its boundaries 'are as expansive as the need to achieve equity and justice.'" Hous. Auth. of Morristown, 135 N.J. at 290 (first quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984) and then quoting Palko v. Palko, 73 N.J. 395, 398 (1977)). In deciding if relief is warranted, a court may consider the movant's delay, the justification for its request, and potential prejudice to the responding party. Parker v. Marcus, 281 N.J. Super. 589, 593 (App. Div. 1995).

Defendant presents compelling grounds for relief from the judgment. Even if service of the registered agent was valid, we have stated that trial courts should treat a motion to vacate more liberally where there is "doubt about [a] defendant['s] actual receipt of the process." Davis, 317 N.J. Super. at 100. Likewise, "the absence of evidence establishing willful disregard of the court's process" favors relief. Ibid. Here, it is undisputed that Tummolillo had no actual knowledge of the suit. Therefore, her company's failure to answer was not willful.

Although Tummolillo certainly could have been more diligent in ensuring that taxes were paid, she was also the victim of her buyers' concealment of their default, and of the fraudulent change of registered agent.

---

who was, in fact, not authorized by defendant to accept service." 1 James W. Moore et al., Moore's Federal Practice, § 4.93 (3d ed. 2020).

In other words, defendant's predicament was mainly another's doing. We have found relief appropriate when a litigant's failure to respond results from another's deceit. Parker, 281 N.J. Super. at 595 (granting relief under subsection (f) where plaintiff's attorney failed to respond to the matter while leading plaintiff to believe that he had).

Defendant's promptness in moving for relief also supports her request. See Reg'l Constr. Corp. v. Ray, 364 N.J. Super. 534, 541 (App. Div. 2003) (affirming relief from judgment "when examined against the very short time period between the entry of default judgment and the motion to vacate"); Jameson, 363 N.J. Super. at 428 (noting the "speed and diligence with which A & P moved to attempt to vacate the default judgment"); Morales v. Santiago, 217 N.J. Super. 496, 504-05 (App. Div. 1987) (reversing denial of motion to vacate because, among other factors, "[s]ellers moved to vacate the judgment soon after it was entered"). The competing goal of promoting finality does not loom so large when the ink has barely dried on the final judgment. At that early stage, "a plaintiff's expectations regarding the legitimacy of the judgment and the court's interest in the finality of judgments are at their nadir." Reg'l Constr., 364 N.J. Super. at 545.

As the court stated in its order setting the amount, time and place of redemption, defendant had the right to redeem "up until entry of final

10

judgment, including the whole of the last day upon which judgment is entered." See R. 4:64-6(b) (stating that redemption of a tax sale certificate "may be made at any time until the entry of final judgment"); see also Simon v. Cronecker, 189 N.J. 304, 319 (2007) (stating that the property owner has "the right to redeem the tax sale certificate at anytime before the final date for redemption set by the court . . . and 'until barred by the judgment of the Superior Court'") (citing N.J.S.A. 54:5-54 and quoting N.J.S.A. 54:5-86). Thus, defendant had until July 25, 2019 to redeem the property. Less than a week later, defendant served its motion for relief from the judgment and for an opportunity to redeem.

We are mindful of the countervailing polices of the Tax Sale Law: to encourage investors to acquire tax-sale certificates and fill municipal coffers with taxes that property owners have not paid. In re Princeton Off. Park, L.P. v. Plymouth Park Tax Servs., LLC, 218 N.J. 52, 62 (2014). In return, the investors obtain the right to receive interest on their investment if the property owner redeems the certificate, and the right to acquire title by foreclosure if it does not. Varsolona v. Breen Capital Servs. Corp., 180 N.J. 605, 618 (2004).

In response to "early hostility" to transferring title for non-payment of taxes, the Tax Sale Law expressly encourages tax sale foreclosure actions. Bron v. Weintraub, 42 N.J. 87, 91 (1964). The Law states that "[t]he

11

provisions of this article [pertaining to foreclosure actions] shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured." N.J.S.A. 54:5-85.

However, "that provision does not negate the specific textual provisions of the Act that protect property owners" from forfeiture. Simon, 189 N.J. at 322, n.10. Significantly, although the Tax Sale Law's main aim "is to encourage the purchase of tax certificates, another important purpose is to give the property owner the opportunity to redeem the certificate and reclaim his land." Id. at 319. See also Sonderman v. Remington Constr. Co., 127 N.J. 96, 109 (1992) (stating that "[t]he primary purpose of the [Tax Sale] Law is not to divest owners of their property, but to provide a method for collecting taxes").

Furthermore, the Tax Sale Law expressly contemplates that a court may grant relief from an otherwise final judgment of foreclosure, although it states that a court shall not "entertain" an "application . . . to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit." N.J.S.A. 54:5-87; see also N.J.S.A. 54:5-104.67 (imposing similar limitation in an in rem tax foreclosure). We have interpreted N.J.S.A. 54:5-87 to permit relief from judgment, within three months, for any reason enumerated in Rule 4:50-1,

12

Bergen-Eastern Corp. v. Koss, 178 N.J. Super. 42, 45 (App. Div. 1981), and "then," meaning "thereafter," "only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit," Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 166, 166 n.8 (App. Div. 2005) (emphasis omitted).  And even the three-month limit must yield to the Court Rules which permit applications thereafter.  M & D Assocs. v. Mandara, 366 N.J. Super. 341, 351 (App. Div. 2004).

In short, the current Tax Sale Law erased prior hostility to foreclosure actions; but, at least within the three-month window, it did not grant tax-sale foreclosure judgments favored status, nor did it impose a heightened burden on an applicant for relief from such a judgment.  And Rule 4:50-1 does not accord tax sale foreclosure judgments greater respect than judgments obtained under other laws that are supported by equally strong public policy.

Granting relief to defendant will wrest from plaintiff title to defendant's property.  But that is not the sort of "prejudice" that a court must consider in weighing a request for relief.  See In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002) (identifying potential prejudice to nonmoving party as one of several factors to be considered on Rule 4:50 motion).  Every order relieving a party of a default judgment forces a responding party to demonstrate its right to relief on the merits.  Plaintiff has not demonstrated any other prejudice,

13

such as detrimental reliance on the judgment. In any event, upon redemption, plaintiff will receive the promised repayment of the taxes and interest.

Rather than address defendant's compelling grounds for relief, the trial court mistakenly focused on the validity of the tax-sale certificate and the non-germaneness of defendant's fraud claim against its buyers.[5] The court also concluded that defendant's failure to ensure its tax payments did not "support [Tummolillo's] plea to this Court of Equity to ignore statutory requirements." However, defendant does not challenge the tax certificate; the two-year period for rebutting its presumptive validity, absent fraud, had elapsed. See N.J.S.A. 54:5-52. Instead, presuming the certificate's validity, defendant seeks to redeem its property upon the court vacating the default judgment. And defendant does not offer the buyers' fraud solely as a defense to foreclosure. Defendant offers the fraud to explain its failure to answer the complaint, and to justify the relief it seeks: vacatur of the judgment so it may redeem.

Finally, defendant's lack of diligence in ensuring tax payments should not deprive defendant of the opportunity to redeem after securing relief from the judgment. In Bergen-Eastern, 178 N.J. Super. at 46, we rejected the argument that the court should deny relief because of the defendant's

---

[5] Because we do not reach defendant's subsection (a) argument, we need not decide the meritoriousness of its proposed lack-of-service defense, which is based on the buyer's imposture.

unexcused failure to pay taxes. We stated that "the issue is whether [the] defendant's conduct in failing to respond sooner to the tax foreclosure proceedings should be forgiven." Ibid. This is especially true here, given the contributory fault of Tummolillo's contract-buyers.

Every defendant in a tax-sale foreclosure action has failed to pay its taxes — because of inattention, willful disregard, or impecuniousness. Yet, the Tax Sale Law preserves for such defaulting taxpayers the right to redeem their property, if they pay the tax-sale-certificate holder what is due. Defendant does not ask the court to "ignore statutory requirements." Rather, defendant asks only that the court vacate the judgment so it can exercise its legal right to redeem. Under the exceptional circumstances of this case, the trial court should have granted its request.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION